LABAN E. LINCOLN *versus* NATHANIEL B. CHADBOURNE.

As between proprietors of dams on the same stream, he has the better right who was first in point of time.

In the trial of an action of trespass on the case, brought by the owner of the middle one of three dams on the same stream against the owner of the lowest, subsequently erected, for damages caused by flowing the wheels of the former, — it is not competent for the defendant, except so far as it might affect the question of abandonment, to prove that the plaintiff's dam caused the water to flow back and injure the oldest and uppermost dam and the mills thereon; and that the proprietor of the last mentioned dam abated the plaintiff's dam as a nuisance, at the time the defendant erected his dam.

Unless the plaintiff abandoned his site, the temporary destruction of his dam would not enable the defendant to acquire, as against the plaintiff, the right of a prior occupant.

ON EXCEPTIONS.

TRESPASS ON THE CASE, to recover compensation for damages alleged to have been sustained to the plaintiff's mill by a dam erected by the defendant.

The first and uppermost dam upon the stream was built as early as 1802, which, with the mills erected thereon, has been maintained ever since.

The plaintiff's (middle) dam was erected from 1823 to 1830.

The defendant commenced the erection of his (lowest) dam in the fall of 1843 and completed it in March, 1844.

The remaining facts appear in the opinion.

*S. D. Lindsey,* for the defendant, and in support of the exceptions, contended that, —

If the plaintiff's dam was lawfully abated as a nuisance, its former existence as a nuisance would give him no right to erect it.

If, after such abatement, and when no dam existed there, defendant erected his dam, he was in the exercise of his lawful rights and would be protected by R. S., c. 126.

Defendant's dam, at the time of erection, operated no injury to a mill lawfully existing.

The abatement severed the connection between plaintiff's present and original dam.

*D. D. Stewart,* for the plaintiff.

BARROWS, J. — Of three dams situated within a short distance of each other on the same stream, each erected either by or with the consent of the riparian proprietor on whose land it stands, the plaintiff's is the middle one and the defendant's the lowest. The plaintiff's dam was originally erected before the defendant's. This is not controverted. In cases of this description *qui prior est in tempore, potior est in jure.*

*Cary* v. *Daniels,* 8 Met., 477 ; *Gould* v. *Boston Duck Co.* 13 Gray, 450, 451. Unless the plaintiff's site had been abandoned when the defendant erected his dam, it follows that, as against the defendant, the plaintiff's dam was lawfully there. The defendant claimed that there has been an abandonment and introduced evidence tending to prove that, in 1843 and 1844, during all the time the defendant was erecting his dam, there was no dam at the place or on the land claimed by the plaintiff, and that none was built there till 1848. Controverting this, the plaintiff offered evidence tending to prove that his dam was only partially torn down in 1843, during the absence of the owner, and that it was rebuilt by him within six weeks, and that the privilege was never abandoned. On this question of abandonment it is expressly stated that no exceptions, either to the rulings or instructions, were taken. The ruling complained of is the refusal to permit the defendant to prove that plaintiff's dam caused the water to flow back and injure the upper dam and the mills erected thereon, which were built long before it, and that the owners of the upper dam claimed that plaintiff's dam was a nuisance and tore it down, removed and abated it as such in 1843. Upon the defendant's offer to prove these things, the presiding Judge ruled that, if it was a nuisance as against the owners of the upper dam, that would not avail this defendant, and accordingly excluded the evidence.

The only question raised by the exceptions is as to the propriety of this one thing.

So far as this evidence might be supposed to bear upon the question of abandonment, we must understand that the facts were allowed to come out; for, as to the rulings and instructions upon that point, no exceptions were taken. Was it admissible for any other purpose than as it might affect the question of abandonment?

The ingenious effort of defendant's counsel is based upon the idea that, if plaintiff's dam was lawfully abated by the proprietors of the upper dam, its former existence as a nuisance would give him no right to re-erect it, and that if the defendant erected his dam after it has been thus abated and while no dam existed upon that site, then the defendant's dam, having been erected in the exercise of his lawful rights, would come under the protection of the statute, and, in fine, he would thus acquire a right superior to that of the plaintiff.

But it must not be forgotten that there is no pretence of a claim that plaintiff's dam could be accounted a nuisance to the defendant, who here simply proposes to set up an injury, done by the plaintiff to a third party, to preclude his recovery in this action. The plaintiff having erected his dam before the defendant had made any movement of the sort, had, so far as the defendant was concerned, a perfect right to maintain it perpetually, and to recover for any injury which the defendant might inflict by means of any subsequent erection below him. Unless he abandoned the site, the temporary destruction of his dam, whether by accident or design, would not enable the defendant to acquire, as against him, the rights of a prior occupant. That he did not abandon has been found by the jury, under rulings and instructions of which the defendant makes no complaint. Only those who were injured by the plaintiff's dam would have a right to cause its abatement. The defendant was not one of these. What the proprietors of the upper dam did, or omitted to do, could confer no rights on the defendant as against the

plaintiff. With the respective rights and liabilities of the plaintiff and those proprietors, and the manner in which they saw fit, as between themselves, either to enforce or waive them, the defendant had no concern. That was a matter which might be the subject of action, negotiation or waiver, between the parties interested; but the defendant was not interested in it. As against him, at all events, the prior occupation by the plaintiff was lawful, the right to maintain such occupation, until the plaintiff chose to abandon it, was perfect; and these carry with them the right to maintain an action for damages done to the possession by one who is unable to justify. Possession alone is, in such cases, sufficient title to warrant a recovery against a mere wrongdoer. *Branch* v. *Doane*, 18 Conn., 233.

One cannot answer proof that he has done an injury to the property of his neighbor, by allegation and proof that that property is in itself injurious to some third person, whose rights he does not represent. The right of abatement of private nuisances cannot be thus extended. And that was the substance of the ruling complained of, — these facts, if they are proved, " cannot avail the defendant." Even if the mill of the plaintiff were a public nuisance, it could not avail the defendant. See *Simpson & al.* v. *Seavey*, 8 Maine, 145; *Odiorne* v. *Lyford*, 9 N. H., 502; *Haller* v. *Pine*, 8 Blackf., 175.

That which mainly serves to give plausibility to the defendant's position, is the erroneous assumption that, if plaintiff's occupation of his mill site was in violation of the rights of the owners of the previously existing upper mill, it was an unlawful occupation as to the defendant also. Not so. No one who was not a proprietor in the upper dam could object to the continuance of the plaintiff's use of his privilege, nor to his rebuilding his dam when it was destroyed. If they demolished his dam, so long as he did not abandon the site, it was competent for him to make his peace with them, and, when they ceased to object, no one else could assert their rights to his detriment. If the defendant assum-

ed to build before the plaintiff abandoned, he took the risk of such a contingency and must abide it.

*Exceptions overruled.*

APPLETON, C. J., KENT, WALTON, DICKERSON and DAN-FORTH, JJ., concurred.