## JOHN D. LAWLER *versus* BARING BOOM COMPANY.

A boom company, being without fault or negligence in the erection and management of its boom, is not liable for the flowage of land not taken under its charter, caused by the boom, in cooperation with an unusual accumulation of logs and a large rise of water.

ON MOTION to set aside the verdict as being against law and the weight of evidence.

CASE, for detaining large quantities of logs in the St. Croix River by means of the defendants' boom, in June, 1865, and thereby obstructing the current of the water, and causing it to flow back and upon the plaintiff's land and injuring his crops.

The writ was dated Sept. 2, 1865.

The defendants pleaded the general issue, with a brief statement claiming a prescriptive right to maintain their boom, and also setting out their chartered rights to maintain the same.

It appeared that the plaintiff owned about twenty-five acres of land, part meadow and part intervale, situated in Baring and Baileyville, on the banks of the St. Croix river, and about one and one-quarter miles above the defendants' boom; that this land was generally flowed more or less in time of freshets; that there has been a dam across the river in Baring and mills erected and in operation there for forty years; that there has been a boom there, substantially in the same place as the defendants' boom, for forty years, and kept and managed substantially as in the year 1865 for the same length of time; that the mills required millions of logs to supply them; that, below the plaintiff's land and about a mile above the defendants' boom, the river was about twelve rods wide, while just below Marpole's Island and above the boom, the river was one-half mile wide, and sixty rods wide at the boom; that from sixty to seventy millions of logs are driven into the boom annually for the supply of all the mills; that the defendants obtained a charter from the Leg-

islature in 1848, authorizing the erection and maintenance of their boom; that the St. Croix Log Driving Company was chartered in 1847 and 1849, had the custody and control of all logs, &c., turned into the river to be floated down, until their arrival at the defendants' boom; that there were two freshets in 1865, one in April and the other in the latter part of May or fore part of June, the latter of unusual height; that, in June, 1865, the river was filled "all full" of logs, from the "narrows" to the distance of two miles above the plaintiff's land; that there was an unusual accumulation of logs at the boom, and the defendants had an unusual number of men employed in June, 1865, to turn out logs from their boom; that they could not work for several days during the extreme height of the latter freshet on account of the force of the current; that it was impracticable to prevent the logs from jamming at the narrows; that the plaintiff's land was flowed from May to July, 1865, and at an unusual height, after the freshet had subsided in the river; and that, on July 17, 1865, when the jam was broken below, the water fell off three feet on plaintiff's land.

The verdict was for the plaintiff.

*J. Granger*, for the defendants.

*E. B. Harvey*, for the plaintiff, cited *Hooker* v. *Canal Co.*, 14 Conn., 146; *Lyon* v. *Jerome*, 26 Wend., 485; *Pillsbury* v. *Scott*, 1 Penn., 309; *Thatcher* v. *Dartmouth Bridge Co.*, 18 Pick., 502; *Boston & Lowell R. R. Co.* v. *Salem & Lowell R. R. Co.*, 2 Gray, 1; *Boston W. P. Co.* v. *Boston & Worc. R. R. Co.*, 23 Pick., 360; *Baker* v. *Boston*, 12 Pick., 184; *Brown* v. *Chadbourne*, 31 Maine, 9.

APPLETON, C. J.—The defendants are a corporation existing by force of a special Act approved July 26, 1848. c. 129. By § 2, they are authorized to "enter upon, occupy and use any rocks, islands or other lands, which at any time have been covered by the water of the St. Croix river, the banks thereof and the land adjoining, necessary for the purposes" of their corporate rights and duties, &c., and pro-

vision is made for compensation to the owners of all lands and other property so taken.

The erection of the defendants' boom is under the right of eminent domain, by virtue of which the Legislature is authorized, for public purposes of sufficient importance, to take private property upon paying therefor a just and adequate compensation. The Legislature determines the existence of the exigency calling for the exercise of this great reserved power, and makes provision for compensation for property so taken. Under this right, corporate bodies, such as railroad corporations, canal companies, and corporations like the defendants', have been empowered to take private property. The object of the legislative grant is the public benefit to be derived from the contemplated improvement, and it matters not whether the improvement is to be effected by the direct agency of the State itself, or through corporate bodies created by the State for that purpose.

No land of the plaintiff has been taken for the use of the defendant corporation. His complaint in substance is, that, being the owner of certain meadow lands, in Baring and Baileyville, "the defendants, by means of a boom and piers, by them had, used and maintained, in the channel of the St. Croix river, below the said lands of the plaintiff, stopped and obstructed great quantities of logs and timber, and lumber, then and there being driven or floated along the channel of said river, and so, by means of said logs and timber, and lumber, obstructed and dammed up the water of said river, and caused the same to overflow its banks and to flow back upon the lands of the plaintiff, * * and the plaintiff's lands were by said overflow greatly damaged, and the use and profit thereof, to the value of five hundred dollars, was wholly lost to the plaintiff," &c., &c.

The defendants were in the exercise of the powers conferred upon them by the Legislature. There was no neglect, no fault in the building of their boom nor in its management. The question presented is whether a public corporation like the defendants, exercising its corporate rights and

performing its corporate duties carefully and skilfully, without negligence or fault, is liable in damages to all who may incidentally suffer injury and loss from the legitimate use of the privileges and the performance of the duties for which it was created.

"In the absence of all statutory provision upon the subject, railways are not liable for necessary, consequential damages to land owners, no portion of whose land is taken, when they construct and operate their roads in a skilful and prudent manner." 1 Redfield on Railways, c. 13, § 75, 2. The principle thus enunciated as applicable to railroads, is equally applicable to all corporations created like the defendant corporation, to meet some public need and to answer some public want. No public improvement can be made without affecting to some extent the value of private property, by increasing or diminishing its value, or in some way rendering its possession and enjoyment more or less desirable.

In *Spring* v. *Russell*, 7 Greenl., 273, the Proprietors of the Fryeburg Canal were authorized by their Act of incorporation to change the channel of Saco river. The plaintiff was prevented by their action, under their charter, from floating his logs down the river as had been his custom, and brought his action for damages thus sustained, but the Court held the proprietors not liable for consequential damages occasioned by turning the channel of the river, as authorized by their charter. In *Rogers* v. *K. & P. Railroad Co.*, 35 Maine, 319, SHEPLEY, C. J., says,—"for any lawful act done by the defendants, in the construction of their road, the plaintiff will not be entitled to recover damages, although he may have been indirectly injured. The defendants will not, therefore, be liable for any damage suffered by the plaintiff, unless they have exceeded the authority conferred upon them and conducted unlawfully." The same views were expressed by this Court in *Whittier* v. *P. & K. Railroad Co.*, 38 Maine, 27, in which SHEPLEY, C. J., very pertinently remarks,—"If any person entertains the opinion,

that he may not be exposed to injuries by legislative enactment without being enabled in all cases to obtain compensation, that opinion is an erroneous one." The constitution will not protect him against all injurious enactments. *Cushman* v. *Smith*, 34 Maine, 247. When a company only does what, by its charter, it is authorized to, and is free from fault and negligence, it is not liable for consequential damages. *Boothby* v. *A. & K. Railroad Co.*, 51 Maine, 318. These views are in accordance with the entire weight of judicial authority. "Indeed," remarks BRONSON, C. J., in *Radcliff's Ex'rs* v. *Mayor, &c., of Brooklyn*, "an act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow." A railroad corporation, which erects a fence on its own land to keep the snow from being blown upon its own road, is not liable for the damages occasioned by the accumulation of snow upon another's land on the other side of the fence. *Carson* v. *Western Railroad Co.*, 8 Gray, 423. "When, then, there is neither negligence nor folly, in doing a lawful act," observes WILLIAMS, J., in *Burroughs* v. *The Housatonic Railroad Co.*, 15 Conn., 124, "the party cannot be charged with the consequences." In the *Pittsburg & Fort Wayne Railroad Co.* v. *Gillieland*, 56 Penn., 445, it was held that there was no liability to a railroad company for not constructing a culvert so as to pass extraordinary floods. "The entry of a company to build its railroad being lawful, it stands as if it were on its own ground, and the maxim applies, *sic utere tuo ut alienum non laedas.* * * The test of exemption from liability for injury arising from the use of one's property, is said to be the legitimate use or appropriation of the property in a reasonable, usual and proper manner, without any unskilfulness, negligence or malice. * * The railroad is not liable for the necessary consequences of its erections, except so far as made liable by its charter." In *C. & R. Railroad Co.* v. *Speir*, 56 Penn., 325, it was decided that canal and railway companies were not liable for consequential damages, in the exercise of

the power of eminent domain derived from the State. Nor will an action at common law lie for a private injury by the execution of legal powers exercised judiciously and carefully. In *Hatch* v. *Vermont Central Railroad Co.*, 25 Vt., 49, it was held that railroad companies were not liable for necessary consequential damages, accruing to premises not taken by them for the construction and operation of their roads.

The defendants only did what was lawful. They erected their boom. It was for the public benefit. They had a chartered right to make these erections. For all property taken, provision was made for compensation. The defendants were guilty of no negligence in their erections. They used all reasonable care in the management of their boom. They did just what they were incorporated to do, and as they were incorporated to do it, — carefully, prudently. The boom was put to its only and appropriate use. If not protected by their charter in doing that for which it was given, what benefit can they derive from it? The defendants have done no wrong, and why should they suffer? *Qui jure suo utitur neminem laedit.*

It is not every one who suffers a loss, who is entitled to recover compensation therefor. A person builds a mill upon his own land. It injures the mill of his neighbor, whose custom is thereby lessened. But the law gives no remedy. One may set a fire on his own land, and, though it spread and burn the woodland of an adjoining proprietor, no action will lie, unless there be negligence on the part of the person setting fire. One by digging on his own land may intercept or drain off the water collected from underground springs in his neighbor's well. He may build on his own land, though it stops his neighbor's lights, nay, for the very purpose of stopping them. In these and similar cases, the loss and inconvenience to his neighbor falls within the description of *damnum absque injuria*, which cannot be the ground of an action.

Whether the lawful act be by virtue of the ownership of

Lawler *v.* Baring Boom Company.

the soil or under the charter of the State, no action can be maintained for its injurious consequences, unless so done as to constitute actionable negligence.

2. The injury for which damages are claimed were neither the natural nor the expected consequences arising from the erection of the defendants' boom. The boom was not a dam, nor was it built to stop the flow of water of the St. Croix. The injury to the plaintiff did not and could not arise from the boom alone. It arose from the concurrence of other causes over which the defendants had no control and for which they are not responsible — an unusual quantity of logs and the jam consequent upon such quantity. A great rise of water, coöperating with the defendants' boom, produced, without fault on the part of the defendants, and while they were in the prudent exercise of their legal rights, the result of which the plaintiff complains.

In a much stronger case than the present, though in some aspects similar, the respondents were held absolved from liability. In *China* v. *Southwick*, 3 Fairf., 238, one S. erected a dam at the outlet of a pond, and thereby raised a head of water, but not so high as to injure C.'s bridge, at the head of the pond. Afterwards, by great rains and a violent wind, the waters were thrown upon the bridge and it was destroyed. *Held*, that S. was not liable therefor to C. in damages; although, if the dam had not raised the water to a certain height, the rain and the superadded wind might not have done the injury. This case is referred to and adopted in *Smith* v. *Agawam Canal Co.*, 2 Allen, 357, which in principle is like the one under consideration. If one building a dam, which is for the very purpose of stopping the water, is not to be held responsible, as was decided in the cases to which we have referred, much more should the boom company be absolved from responsibility for any unexpected loss arising from the stoppage of water, caused

in part by their erection, which was built for no such purpose and, of itself, could never have operated as a dam.

*Motion sustained.*—*New trial granted.*

CUTTING, WALTON, DICKERSON and DANFORTH, JJ., concurred.