*Ex parte* First National Bank of Portland :—*In re* Thompson & another.

York.   Opinion March 1, 1880.

*Insolvency.   Individual and partnership debts.   Proofs of claims.*

Two persons, partners, not having adopted any firm name, made notes in their individual names, one as maker and the other as payee and indorser, and got the notes discounted at a bank, for the purpose of using the money obtained thereon, and using it, in their partnership business. They are in insolvency and have estates both as partners and as individuals. It was not known to the bank, when the notes were discounted, that they were partnership paper or given for partnership purposes. *Held:* That the bank had an election to prove its claim either against the partnership estate, or against the estates of the individual members of the firm; but was not entitled to prove them against both the joint and the several estates.

The bank having filed the claims against all the estates before the rule affecting its interests had been established by statute or judicial decision, a reasonable time is allowed to reconstruct the proofs in accordance with the principles of the decision given.

ON EXCEPTIONS.

On October 28 and November 6, 1878, the partnership of Joseph Titcomb and Wm. L. Thompson, as well as they individually, were duly adjudged insolvent by the court of insolvency, in and for the county of York, on due proceedings had.

On December 28, 1878, the First National Bank, appellants in this proceeding, filed in said court proof of a debt against the partnership amounting to $5,827.93, comprising $5,476.16 (making the proper rebate of interest) "for money loaned on the two promissory notes and in form signed by said Thompson as maker, payable to said Titcomb and indorsed by him, but really made, discounted, and proceeds used in the course of their partnership business and for partnership purposes." Also $351.67 for money loaned to Joseph Titcomb and Wm. L. Thompson as joint indorsers of a promissory note signed by David Clark, payable to said Joseph Titcomb and Wm. L. Thompson and by them indorsed, which note has been protested for non-payment.

The deposition of the appellant's cashier, filed as proof of the debt, averred that the appellants had no "security whatsoever, except the right to prove said notes against the separate estates of said Thompson and said Titcomb, which said bank does not waive, but expressly reserves to itself."

On the same day the appellants also filed proof of a debt against Joseph Titcomb individually for the said sum of $5,476.16 as indorser of the two notes first above mentioned, the deposition of the cashier averring that the bank had no security whatsoever, except the right to prove said notes against said Thompson's individual estate, and also the right to prove said notes against the joint estate of said Thompson and Titcomb as partners, which said rights and proofs already made, are not waived but expressly claimed.

Like proofs were made and reservation claimed against the individual estate of W. L. Thompson.

On the same 28th December, Cyrus K. Brock, a creditor of W. L. Thompson, filed objections to the allowance of the appellant's claim against the separate estate of Thompson, in substance, as follows:

1. Because Thompson is not liable upon said notes as maker, as upon his distinct and separate contract, and neither is Titcomb, as his distinct and separate contract as indorser;

2. Because the consideration of the notes passed to Thompson and Titcomb jointly as partners and for partnership uses, and

were given and accepted as partnership notes and not as the separate notes of Thompson as maker and of Titcomb as indorser individually;

3. Because said notes have been proved and allowed against the partnership estate of Thompson and Titcomb, and are in fact and in law partnership notes and not provable against their respective separate estates; and

4. Because said bank is not a creditor of Thompson individually so as to be entitled to any distribution from his separate estate.

Joseph Dane, assignee of the insolvents, also on the same day filed objections to the allowance of said first two notes against the separate estate of Titcomb, the same in substance as the first three above named, adding a fourth in substance that, if in law said notes constitute a debt, either against the partners and the partnership estate, or against them individually, yet they are not provable against their joint and separate estates; but that the appellants are bound to elect against which they will prove them; and that they are entitled to dividends only from the partnership or separate estates, against whichever they may so elect to prove their claim.

The judge of the court of insolvency allowed the proofs against the partnership estate, but disallowed them against the separate estates of Titcomb and of Thompson, whereupon the bank appealed and duly entered their appeals at the January term, 1879, of the supreme judicial court, holden at Saco, when the 18th of February, 1879, was duly assigned for the hearing, which was then commenced and adjourned to March 20, 1879, when it was concluded. The cases were then continued for advisement, until the 31st March, 1879, when the presiding justice directed that the judgment and decree of judge of the court of insolvency be reversed and that the proofs of the appellants on the two notes made by said Thompson and indorsed by said Titcomb be allowed against the individual, but not against the joint estate of Titcomb and Thompson—putting the ruling upon the ground that commercial paper is different from other written contracts, and that nothing *dehors* the notes is admissible to change their terms or the liabil-

ities of the parties to them—that the notes themselves disclose no partnership or partners in the transactions.

The appellants alleged exceptions, and the parties agreed that the law court may pass such final orders and decrees concerning the proof of said debts as the law of the case requires, and may consider the facts found, if in their opinion evidence of such facts is admissible.

*M. M. Butler & C. F. Libby,* for the appellants, contended that the appellants are entitled to prove against both the partnership and individual estates, and cited *Emery* v. *Canal Bank,* 7 Bank Reg. 217. *Ex parte* Farnham, 6 Law R. 21. *Mead* v. *Nat. Bank,* 2 Bank Reg. 173. *In re* Bigelow, 2B. R. 371. *In re* Bradley, 2 Biss. 515. *Stephenson* v. *Jackson,* 9 B. R. 255. *In re* Thomas, 17 B. R. 54. *In re* Holbrook, 2 Lowell, 262. *Ex parte* Young, 2 Rose, 40. *Trowbridge* v. *Cushman,* 24 Pick. 310. *In re* Warren, 2 Ware, 322-6-7. *In re* Thomas, 17 N. B. R. 54. *Richards* v. *Higgins,* 23 N. H. 106. *Kendrick* v. *Tarbill,* 26 Vt. 512. 1 Story Eq. Jur. § 175 and cases cited. *Ex parte* Norfolk, 19 Ves. 458. *Robinson* v. *Wilkinson,* 3 Price, 538. *Millidge* v. *B. I. Co.,* 5 Cush. 158, 170. *Emerson* v. *Prov. H. M. Co.* 12 Mass. 237, 245. *Reimsdyk* v. *Kane,* 1 Gallison, 630. *Ex parte* Adamson, 8 Law R. Ch. Div. 807. 2 Lind. Part. 1248. Robson Bank. 617. *Ex parte* Bentley, 2 Cox, 218. *Ex parte* Bond, 1 Atk. 98.

*S. C. Strout & H. W. Gage,* for C. K. Brock, objecting creditor, contended that notwithstanding the form of the notes, they are to be treated in insolvency as partnership notes, and so must be proved by the appellants against the firm, and cannot be proved against the individual estates. *Wild* v. *Dean,* 3 Allen, 579. *Babb* v. *Mudge,* 14 Gray, 534.

The weight of authority here, as in England sustains our position, that commercial paper, no matter what its form, if really made, and proceeds used for firm purposes, is treated, in insolvency, as partnership paper. *In re* Warren, 2 Ware, 322. *Kendrick* v. *Tarbell,* 27 Vt. 512. *Norton* v. *Seymour,* 3 M. G. & Scott, 792. 23 N. H. 206.

"The bankrupt court acts upon equitable principles," Judge Lowell says, *In re* Holbrook, 2 Lowell, 262. In *Mead* v. *U. Bank*, 2 B. R. 177, Judge Hall calls this doctrine a reasonable one, that the form of the security does not determine its character as a firm or individual debt, and cited with approval, *ex parte* Brown, 1 Atk. 225, and *ex parte* Emity, 1 Rose, 61, in which one partner gave his own bond for money borrowed for the firm and it was held a firm debt. *In re* Thomas, 17 B. R. 55. *In re* Gesson, 9 B. R. 378.

To constitute a firm note at law, it must be signed by the firm name. The firm in law, is an entity as distinct from its members, as a corporation from its stockholders, and a note signed by every member of a firm in his individual name, would be an individual and not a firm liability, at law, but such paper, in bankruptcy, is uniformly treated as firm paper, if it is proved to have been made and used in and for firm purposes. And yet such paper, if payable to order, is as much commercial paper, as the notes in controversy here. *Ex parte* Weston, 12 Met. 1.

In the case at bar, the notes are executed in one form—there is no firm contract and individual contract on their face. They are either individual or firm liabilities—not both, and therefore fall within the equitable principle, that being proved to have been made and used in that form for partnership purposes, they are to be treated, in marshalling the assets in insolvency, as firm liabilities, to be paid from the firm assets and not individual. *Agawam Bank* v *Morris*, 4 Cush. 99.

We do not overlook the fact found by the court, that at the time the notes were discounted, the bank had no knowledge that they were for firm purposes. Undoubtedly if the bank took the paper as individual paper, according to its form, they would have the right to say that they would rely upon the liability apparent upon the paper, and hold the parties as maker and endorser individually, but when they learned the fact, which they state in their proofs against the firm, that the note, notwithstanding its form, was made and discounted for the firm, and proceeds used for firm purposes, they had the right to elect whether to stand upon the form of the paper or rely upon the firm liability. But they were

bound to elect when they proved, they then having knowledge of all the facts, and by proving against the firm, they did elect to hold the firm, upon the equitable doctrine administered by the courts and enacted in our statutes (§ 54), and thereby waived their right to stand upon the form of the paper. They cannot set up the form of the notes for one purpose and ignore it for another. They have had their proof against the firm allowed upon the ground that these notes are not what they appear, but are really to be treated as firm notes, and they still retain and have the benefit of it. It is therefore too late for them to fall back upon the form of the paper, and their ignorance of the facts, at the time the notes were discounted. The reservation of this right in the proofs is of no avail. Their two claims are inconsistent—they cannot both stand—and after weighing the probabilities they have elected to hold the firm, and by so doing have lost the claim against the individuals. Hilliard on Bankruptcy, § 4, 527. Watson, 19 Vesey, 459. *In re* Herrick, 13 B. R. 312.

The creditor is bound to make his election when he knows he has the right of choosing his debtor. Per Lord Tenterden, in *Thomson* v. *Davenport*, 9 B. & C. 87. *Patterson* v. *Gandasequi*, 15 East. 62. *Raymond* v. *Cramer & Eagle Mills*, 2 Met. 327.

We think, therefore, that the bank must stand to its proof against the firm, and cannot prove against the individual estates. It follows, of course, if we are right in our position, that a note in form individual, is to be treated, in insolvency, as a firm note, if it was made for firm purposes; that evidence is admissible to show such a state of facts as would bring the paper within this principle. *Trowbridge* v. *Cushman*, 24 Pick. 313.

*Joseph Dane*, assignee, *pro se*, contended that the appellants must prove against the joint, or several, estates; and in a very elaborate, learned and interesting brief said, *inter alia ;*

1. In the matter of proof of claim, in the course of insolvency proceedings in this state, the creditor's only right is to make his proof upon contracts against partnership or separate estates, or against all of said estates, just as such creditor's claim shall be found to be in its nature partnership or individual, or partnership and individual. Determine the nature of the contract in respect

to its being partnership or individual, distinctively so, or as having both of these as distinct contracts and the question is solved as against the estate or estates where provable.

And further, such a creditor cannot prove double upon one distinct contract in order to elect against which estate he will draw dividend—but only against the distinct estate against which he has his distinct contract; and cited Insolvent act 1874, c. 74, §§ 13, 54. Stat. Mass. 1838, § 21. U. S. B. law, 1841, § 14, 1867, § 36. *Conant* v. *Perkins*, 107 Mass. 81. Stat. 1874, §§ 53, 22, 35. *Ex parte* Whitside, 1 Rose, 319 (year 1813). *Ex parte* Graham, 1 Rose, 458 (year 1813). *Turner* v. *Whitmore*, 63 Maine, 526.

It will be seen on reference to the cases, that changes in proof have been allowed from one estate to another for special equitable reasons. Generally because the first was made under mistake and in ignorance of the right to prove against the other estate. *In re* Adamson cited by counsel the first proof was made in utter ignorance of any right to prove against the other estate and consequently the court held that he was not concluded for there could be no election about a matter of which there was no knowledge, (a ground on which the bank here cannot rest as we shall hereafter show it had full knowledge.) The cases in England upon the subject of proof are conflicting and contradictory. The whole matter was for a very long period governed by equitable considerations, it being said that the court had "a legal and equitable jurisdiction." If we look at the proceedings carefully we find it was as much a matter of practice as anything. The first statute was passed, 34 and 35 Hen. 8, year 1543, entitled an "Act against such persons as do make bankrupt." Under this the "Lord Chancellor," (and others enumerated) "shall have power and authority" . . . "to take by their wisdoms and discretion such order and direction" in brief as seemed proper "over the bodies and property of the persons described, for the true satisfaction and payment of the said creditors." There were no commissioners under this statute. These were provided for, Stat. 13, Eliz. chap. 7, year 1571, and were appointed by the Lord Chancellor. By the Stat. June 24, 1732, 5 Geo. 2 chap. 30, provision was made for assignees, proof of

debts, commissions to order dividends, and the Lord Chancellor was authorized to have proceedings of record. This act was for three years but finally made perpetual. See acts in full in "Cooke on Bankruptcy." It was the practice in cases of partnership to issue commissions generally, joint commissions and several commissions, and sometimes proof was all made under one. The irregularity was such that *in re* Simpson, 1 Atkyns, 138, the Lord Chancellor said "it should seem for the future that where there is a joint commission depending, separate creditors ought not to take out a separate commission but apply for an order to be let in and prove their debts under the joint commission." As late as 1815, *Raffrey, ex parte,* 19 Ves. 469, the Lord Chancellor says: "In bankruptcy the Lord Chancellor exercises more by habit and practice than authority." * * * "Upon the statutes and the decisions in bankruptcy it is obvious that no authority is given by the statute for a great part of the jurisdiction now exercised, and unless Lord Hardwicke was right in supposing (according to a note which I have,) that the legislature giving the jurisdiction to the Lord Chancellor intended him to exercise both a legal and an equitable jurisdiction, there is no authority for a vast deal that is done. It is impossible to support what we do upon joint and separate commissions, even to the harsh proceeding of commitment, except upon the principle, which I was happy to find in that note of Lord Hardwicke's, as it has explained much that perplexed me."

It would not seem that the few exceptional cases in England in which double proof has been allowed to stand in order that the creditor could ascertain the greater store from which to draw a supply, should constitute any precedent by which claims are to be proved here in Maine under statute authority, when such ruling in England was "more by habit and practice than authority."

2. Parol evidence is admissible in bankruptcy and insolvency proceedings *dehors* the notes, in order to show that although in form apparently individual, yet that in fact they are really partnership notes and therefore provable as such.

It must not be forgotten in the discussion of this proposition that the notes in this case are to be examined as notes held

between the immediate parties and not as notes between third parties. *Ex parte* Hunter, 1 Atkyn's Chancery Rep. 223. *Ex parte* Stone, 8 Law Rep. Ch. Appeals, 914. *Hoare et als.* v. *Oriental Bank,* 2 Law Rep. Appeal Cases, 589. *The Berkshire Woolen Co.* v. *Julliard,* receivers. Copy of opinion court of appeals, N. Y. The case not yet published. *Ex parte* Law, 3 Deacon Rep. Cases in Bankruptcy 541, year 1839. *Linden* v. *Bradwell,* 5 C. B. 583, year 1848. *Edmunds* v. *Bushell & Jones,* 1 Law Rep. 2 Q. B. 97, year 1865. *Simpson* v. *Henning,* 10 Law Rep., Q. B. 406, year 1875. *In re* Warren, Davies Rep. 324. *Richardson* v. *Higgins,* 23 N. H. 106. *Kendrick* v. *Tarbell,* 27 Vt. 502. *In re* Thompson & Sivyer, 17 N. B. R. 54. *Tilley* v. *Phelps,* 18 Conn. 295. *Weston,* appellant, 12 Met. 2. *Forsythe* v. *Woods,* 5 N. B. R. 80.

3. If the facts found in the case are admissible, the bank occupied a position (according to the authorities already considered,) where it might stand either upon its notes as several contracts, or elect to stand upon them as joint contracts.

It is manifest that if they relied upon the notes as contracts, they could not prove them both as joint and several. Upon this we do not propose to add more to what has been already stated, than to apply the language of Wallace, J., *in re* Herrick, 13 N. B. R. Rep. (p. 314,) where he says : "The attempt of the creditor here is one to obtain satisfaction from the joint estate and from the individual estates of a demand, which was originally either several or joint, but was never both several and joint. The position is not sanctioned by precedent or analogy or principle ; it would be repugnant to common honesty to sustain it."

4. The bank exercised its right to elect upon its contract, and right of proof when it proved against the partnership estate, and therefore has no right of proof against the separate estates.

5. The counsel for the appellants claim a right to prove against the estates upon the ground of fraud on the part of the insolvents, because of an alleged concealment of the partnership character of the paper, at the time of its discount.

We think there is no foundation for this proposition to rest upon in law or in fact, and the bank is not in position to raise this

question. It has made its proof founded upon the notes as valid contracts.

6. If the "facts found" are not admissible, then the proofs against the separate estates should stand; on the other hand if such "facts" are admissible, such proofs should be disallowed, and the proof against the partnership estate should stand as allowed.

PETERS, J. The insolvent debtors, Thompson and Titcomb, were partners, having no regular partnership name. All the promissory notes given by them in their partnership business were signed either by one partner as maker and by the other as payee and indorser, or by both partners as joint makers in their individual names. The note in the present case was given in the first named form, probably to give the appearance of there being two parties to the note instead of one. The officers of the bank who discounted the note were ignorant of the fact that a partnership existed between the parties. With the partners themselves, the transaction was the same as if the money had been borrowed upon their note in strictly partnership form. The money was borrowed for and applied to partnership purposes. But for failure, the partners would have paid the note from the money of the firm. One partner could have no advantage over the other, although one was indorser only. As between themselves, both were makers and both indorsers. Presumably, they intended to give a partnership note. They have themselves treated it as a partnership liability under all circumstances. In executing the written evidence of a partnership promise, they made an instrument which, for that purpose, may be regarded as informal and literally incorrect.

Is the bank entitled, in insolvency, to prove its note, or, what is in substance the same thing, to prove its claim for the money given as a consideration for the note, against the partnership estate of Thompson and Titcomb? We think it is. The borrowed funds are a part of the partnership estate. It is just and equitable that the same estate, proportionally to its sufficiency, should restore such funds to the lender.

The doctrine applicable to this question, and based upon considerable authority, is stated by Prof. Parsons in his work on Part-

nership, p. *498. Treating of estates in bankruptcy, he says : "It not unfrequently happens that persons who actually are in partnership, and in one firm, appear to the world as distinct traders, or as distinct firms, for the convenience and advantage of using the names separately upon negotiable paper. Thus, if there are three partners, who call themselves so, they could use only the name of A., B. & Co. But, if not known as partners, A. may draw on B. in favor of C., and B. may accept and C. may indorse, and the paper have apparently three distinct liabilities. The question may then arise, may the holder proceed against the several estates of all these persons, or only against the joint fund of these firms ? The authorities on this point are conflicting ; nor do they cover the whole ground. We would state the result, however, thus : If the holder took the paper on the credit of the several names, and in ignorance of their joint interest, he certainly may prove against all the parties severally. But he may elect to proceed against the firm, or the joint fund, because what he held was in fact partnership paper." See Story's Part. § 388 ; note and cases.

It is said that an objection to this doctrine is the rule of law that oral evidence is not admissible, in cases of commercial paper, to prove any person a party to a bill or note who does not appear to be such upon the face of the paper itself. But equity looks more to the fact than to form. And the rule of distribution incorporated into our insolvent law is one imported from the principles and practice of courts of equity. *In re* Warren, Davies, 327. *Ex parte* Foster, 2 Story, 131. *In re* Holbrook, 2 Lowell, 262. The cases in which the strict legal view has been upheld will be found to be mostly actions at law, where the effort has been by the holder of a bill or note to fix the liability upon some defendant whose name was in no manner written or indicated on the instrument itself, or where the facts differ in some other essential respects from the facts of the present case. Here the names of both partners are upon the note. Both are holden thereon.

It would not be pressing the facts too far, to bring the partnership estate within the limit of liability, upon the ground that this note was executed as and for partnership paper under a style

adopted as a partnership signature.   It is well settled that a partnership may adopt the name of a single partner as a firm name. It may have most any kind of a name, and more names than one. The name may be expressly agreed upon, or it may come about in the course of dealing and by a usage of the firm.   Pars. Part. *213.   Story's Part. § 142, and cases.   In the case of *Ex parte* Nason,—*In re* Thompson et al., *ante*, we have found that the law would authorize evidence to show that a note jointly signed by these parties (Thompson and Titcomb) in their individual names was a partnership note, and the cases cited in that case will shed light upon the present case.   That was one mode of partnership signing.   This is another mode.   They were accustomed to sign in the one or the other manner for all partnership liabilities.

The bank, it is to be presumed, would have taken a note in a better commercial form had its officers known the fact of partnership, and had they preferred the paper of the firm.   Not having an opportunity to make the election then, through misunderstanding, they should not be debarred from the right afterwards. *In re* Warren, cited *supra*.   *Paine* v. *Dwinel*, 53 Maine, 52. *Palmer* v. *Elliott*, 1  Cliff. 63.   Nor, taking the paper upon the faith of the several promises of the parties, should the bank be compelled to prove against the joint estate.   It may pursue the contracts appearing upon the note.   But it should not prove in both ways.   There is nothing to indicate to our minds that joint and several promises were either made or understood to be made.

We think the bank should have elected which remedy to pursue when the proof was tendered, had the views of the court upon the question of law involved in the matter been known at that time.   Under the circumstances, a future day may be assigned for an election of proofs, the record to be amended and rectified accordingly.   It will be noticed that the parties, by agreement, submit to us the right of making any final orders and decrees that may be proper in the premises.

APPLETON, C. J., WALTON, BARROWS, DANFORTH and SYMONDS, JJ., concurred.