# CHARLESTON.

PICKENS v. COAL RIVER BOOM & TIMBER CO.

Submitted January 14, 1902.    Decided April 5, 1902.

1. DAMAGES—*Act Must be Unlawful.*
   Unless an act is wrongful in the sense of being unlawful, it will not sustain a suit for damages.    (p. 448).

2. RIPARIAN OWNER—*Floatable Streams—Damages.*
   A citizen or corporation lawfully using a floatable or navigable stream in a proper manner is not liable to a mill or other riparian owner for unavoidable damage or injury caused by such use.    (p. 449).

3. FLOATABLE STREAMS—*Erection of Booms.*
   The erection of a boom in a lawful manner for the purpose of catching and holding logs is a proper and lawful use of a navigable or floatable stream.    (p. 451).

4. ERECTION OF BOOMS—*Negligently Maintained.*
   Unless such boom be negligently, unlawfully or improperly erected or managed the corporation erecting or maintaining the same is not liable for any injury or damage occasioned thereby to others using the banks and bed of such stream for milling or other purposes.    (p. 447).

5. MILL OWNERS—*Constitutional Right.*
   Section 28, page 1071, Code, created no new right in mill owners, but only placed the existing constitutional and common law rights of such riparian owners beyond judicial construction to the contrary.    (p. 446).

6. MILL—*Water Power—Boom Damages.*
   The erection of a boom in such close proximity to a mill without consent of the owner thereof as to impede the flow of the water and thereby cause a deposit of sand and other sediment immediately below the dam of such mill whether a natural fall or an artficial structure in such manner as to destroy in an appreciable degree the water power of such fall or dam, creates an unlawful nuisance and renders the owner of such boom liable to the mill owner for the damages occasioned by the creation and continuance of such nuisance.    (p. 450).

7. MEASURE OF DAMAGE—*Mill Owner—Nuisance.*
   The measure of damages is the loss sustained by such mill owner during the continuance of such nuisance and is to be ascertained by the rental or profit earning value of such property, as though such nuisance did not exist.    (p. 450).

8.  PERMANENT DAMAGE—*Boom—Nuisance.*

Permanent damages may not be given for the maintenance of a nuisance occasioned by an impermanent, movable or re-formable structure like a boom, but after a judgment obtained the continuance of such nuisance will subject the nuisancer to exemplary or punitive damages.    (p. 452.)

9.  MILL DAM—*Boom Erected Too Close.*

Whether a boom is in too close proximity to a mill dam de-pends on the fall of the stream and the effect that such boom has on the flow of the waters above the same and is a question of fact for the determination of a jury from the evidence pro-duced.    (p. 453).

10.  MILL DAM—*Boom Erected Too Close.*

A lessor who erects a boom in so close proximity to a mill dam as to injure the water power of such dam and thereby creates a nuisance against the same is equally liable with his lessee with notice for the continuance of such nuisance.    (p. 453).


Error to Circuit Court, Kanawha County.

Action for damages from the maintenance of a boom by Roman Pickens against the Coal River Boom & Timber Com-pany.  From a judgment for plaintiff, defendant brings error.

*Reversed.*

BROWN, JACKSON & KNIGHT and PAYNE & PAYNE, for plain-tiff in error.

CHILTON, MACCORKLE & CHILTON and MOLLOHAN, McCLIN-TIC & MATTHEWS, for defendant in error.


DENT, PRESIDENT:

Roman Pickens obtained a judgment in the circuit court of Kanawha County on the 24th day of April, 1900, against the Coal River Boom and Timber Company for the sum of twelve thousand one hundred and ninety dollars.  The defendant be-ing dissatisfied therewith assigns numerous reasons why the same is erroneous.

The first is the overruling of the demurrer to the declaration and each count thereof.  The first and third counts charge the defendant with the erection of a boom in Coal river below the plaintiff's mill thereby obstructing the water in such manner as to cause a deposit of sand in the bed of the stream below and

materially injuring the water power of the mill. In neither count is it charged that the boom was unlawfuly or wrongfully constructed or the water power unlawfully or wrongfully obstructed. For failure in this respect both counts are bad. They should either charge the act complained of was unlawful or wrongful. There can be no legal damage unless the act complained of is unlawful or wrongful. A wrong imports unlawfulness and there can be no wrong unless a legal right is invaded. "That which is right and lawful for one man to do cannot furnish the foundation for an action in favor of another." Cooley on Torts, 93; *Porter* v. *Mack,* 50 W. Va. 581, (40 S. E. R. 459); *Lawler* v. *Baring Boom Company,* 56 Maine 443. "Where the act or omission complained of is not *prima facie* actionable, it should be stated that the act was done wrongfully." 21 En. Plead. & Prac. 917; *Railway Co.* v. *Railway Co.,* 47 W. Va. 728; *Guilford & Co.* v. *Kendall,* 42 Ala.; *McKenzie* v. *Railroad Co.,* 27 W. Va. 306. The allegations in the declaration may be true and yet the defendant be guilty of no wrongful act, for he may have lawful authority to do that which he is charged with and not have violated the defendant's legal rights. Hence it is necessary to allege the act complained of was wrongfully, unlawfully or negligently done or some language of like import should be used so that the defendant may be put to the plea of not guilty. Plaintiff's counsel attempt to justify this omission because the statute relating to booms, section 28, App. Code, p. 1071, provides, "That nothing in this act shall be so construed as to deprive the owners of mill property and other proprietors on the said river and branches thereof from recovering damages for injury to their property by the said corporation, their agents or employes." This instead of justifying the omission authorizes the use of the words wrongful or unlawful. The object of this reservation is to preserve the constitutional and common law rights of mill owners, and to set at rest any claim that might be made that authority given to a boom company to erect its boom took away from mill owners the right to demand damages if their mill property was unlawfully injured thereby. The act relieves the boom from being a public nuisance, yet it makes wrongful injuries to private property caused by its construction still unlawful. It may be a private nuisance. This provision which amounts to nothing more than the reservation of common law and constitutional

rights was made necessary from the fact that certain authorities place the granting of public franchises upon the same platform with the public agents of the government and hold that when they have not exceeded the power conferred on them and when they are not chargeable with want of due care, no claim can be maintained for any damage resulting from their acts. Sedgwick on Damages, 110, 111. This holding has been repudiated by a great weight of authority, but our legislature desired to place the matter beyond the power of judicial construction to the contrary. This provision sets at rest any claim of exemption from any unlawful damages to private property, a boom company may attempt to assert by virtue of its charter and the public nature of its employment. It is placed on the same basis as a private citizen so far as the rights of other private citizens are concerned. The act says to the boom company, you may have the public franchise and the right to erect a boom but you must pay to every private citizen whose property is unlawfully injured by you such damages as may be occasioned thereby. If the boom company accepts, it acquires the right of floatage, the right to erect a boom and the right to use the stream in a reasonable manner so long as it does no unlawful damage to the property rights of another. If it does such unlawful damage its charter furnishes no protection against the same. This is the proper conclusion that was reached in *Rogers* v. *Coal River Boom and Driving Co.,* 41 W. Va. 593 (23 S. E. 919), and is the same conclusion that was arrived at on the former hearing of this case. It is equivalent to saying that "An act done under lawful authority, if done in a proper manner, can never subject the party to an action whatever consequences may follow." *Radcliffe* v. *Mayor,* 4 N. Y. 200 (53 Am. Dec. 337). For these reasons the demurrer to the first and third counts should have been sustained from the fact that they fail to allege that the act complained of was done improperly, negligently, unlawfully or wrongfully. Admitting, however, this to be true, is the court justified in reversing the judgment by reason thereof? Not if the second count be good and all the plaintiff's evidence was admissible thereunder. *Wood* v. *Bloch,* 29 W. Va. 244.

The second count charges the construction and maintenance of the boom in such negligent, unskillful and unlawful manner that the plaintiff's natural fall and milling property were dam-

aged thereby. While the word wrongful is not used in this count, yet the words negligent and unlawful fully supply its place and render the count good. *Rogers* v. *Boom Co.*, cited. These words "negligent, unskillful and unlawful" have no reference to the State's rights as representative of the public for these it acquired by virtue of its charter, but they refer to the plaintiff's private rights as to which it is alleged the boom was so negligently, unskillfully and unlawfully constructed and managed as to impair or destroy them in whole or in part and resulted in the plaintiff's damage. The question naturally presents itself as to what were the legal rights of the plaintiff which the defendant unlawfully invaded. In the case of *Buchanon* v. *The Grand River Log Co.*, 48 Mich. 364, it was held, "The right to obtain water power from a stream for milling purposes and the right to use the stream for floatage of logs modify each other and though the exercise of each may render the other less valuable, there is no ground for complaint if it is considerate and reasonable." A navagable stream may be used for both milling and log purposes in a reasonable manner, notwithstanding such uses may mutually interfere with and injure each other. 4 Am. & En. En. Law (2d Ed.) 710, 711, 712. Such rule applies even to streams only floatable in damp weather. *Gaston* v. *Mace*, 33 W. Va. 14. A reasonable manner means in such manner as will not destroy or impair the common law or constitutional rights of a prior mill operator. It does not mean an illegal manner. In determining where to locate and how to construct its boom, it was the duty of the defendant to so construct and locate it as not to injure plaintiff's dam rights or water power whether natural or artificial. If it did so its action was wrongful and illegal and the construction of its boom unskillful and negligent in so far as those rights were concerned. It had no right to locate its boom in such proximity to plaintiff's water fall or dam or so construct it as to render the same materially less beneficial to plaintiff. Nor had it the lawful right to locate and construct its boom any place below plaintiff's water power where such an effect would be produced except by paying him the damage occasioned thereby. *Tinsman* v. *Belvidere Delaware R. R. Co.*, 2 Dutcher (N. J.) 148; *Richards* v. *Peter*, 70 Mich. 286; *Tillotson* v. *Smith*, 32 N. H. 94; *Lee* v. *Pembroke Iron Co.*, 57 Maine 481; *Brown* v. *Bush*, 45 Penn. St. 61; *Crittenden* v. *Wilson*, 5 Cowen 165;

*Eddy* v. *Simpson,* 3 Cal 247; *Pearson* v. *Rolfe,* 70 Maine 380; *Dwinel* v. *Veazie,* 44 Maine 94; *Pillsbury* v. *Moore,* 44 Maine 91; *Alexander* v. *City of Milwaukee,* 16 Wis. 255; *Miller* v. *Shenandoah Pulp Co.,* 38 W. Va. 558.

From these authorities it is plain that if defendant's boom is so located and constructed as to cause the deposit of sand and debris and temporarily injure plaintiff's natural fall or prior artificial dam, such location and construction are unlawful and wrongful in so far as plaintiff's private rights are concerned and defendant must answer to him for the damages occasioned thereby.

While the count is so framed as to cover permanent damages, yet from the nature of the wrong it is evident that the plaintiff may only recover temporary damages. The boom is not a permanent structure as compared with plaintiff's water power. It is temporary and movable. After it ceases to be useful from the exhaustion of the timber on the waters of the stream it will be removed or abandoned and it is liable at any time to be washed out by the force and effect of repeated floods. A permanent structure is one that is to continue for all time except for some unforeseen event, while a temporary structure is one erected for a known temporary and limited business. This boom was never intended to be permanent. Yet this suit is not for the wrongful construction of the boom but it is for the wrongful deposit of sand resulting from the wrongful location and construction of the boom. A different kind of boom or a boom on a different location would not have so affected the deposit of sand. An act in itself perfectly lawful becomes unlawful from its effects on the rights of others. *Tinsman* v. *Belvidere, etc., R. R. Co.,* 69 Am. Dec. 571, cited before, 2 Dutcher (N. J.) 148. The deposit of sand is a nuisance to plaintiff's property not of a permanent nature, for their is nothing more shifting than sand, especially when under the influence of moving waters. If the boom caused the deposit its removal, reformation or destruction will entirely remove the holding back force and the unrestrained waters will soon reduce the river bed to its natural level. The giving of permanent damages to the full extent claimed in the declaration would be equivalent to a transfer of plaintiff's water power to the defendant. This plaintiff cannot demand for defendant has the

right to abate the nuisance and stop the injury and plaintiff can only ask that until it does so it pay him damages for the continuance thereof, such damages as he suffers by loss of the temporary use of his water power. *Guinn* v. *R. R. Co.,* 46 W. Va. 151; *Rogers* v. *Coal River B. & D. Co.,* 39 W. Va. 272; *McKenzie* v. *R. R. Co.,* 27 W. Va. 306; *Hargreaves* v. *Kimberly,* 26 W. Va. 788; *Smith* v. *R. Co.,* 23 W. Va. 451. This action is not for the original wrongful cause of the nuisance, but it is for the wrongful continuation thereof. It cannot be barred by the statute of limitations except as to its maintenance five years previous to the institution of the suit. A judgment in this suit will not license the continuance of the nuisance, as in case of permanent damages for a permanent structure, but rather makes it the more unlawful as becoming wilful in its nature and will subject the nuisancer to examplary damages. 3 Sedgwick on Dam., s. 924. All that plaintiff may recover in this action is the damages suffered by reason of the loss of the use of his water power occasioned by the wrongful continuance of the nuisance, resulting from the unlawful location and construction of defendant's boom, during the preceding five years. No permanent damages are recoverable, for no permanent damages are inflicted. Plaintiff is only deprived of the temporary use of his property. For this if occasioned by defendant's wrongful acts continued from day to day he should be fully compensated. Defendant must abate the nuisance or be liable to repeated actions from time to time growing in severity until the same is abated.

This virtually disposes of the instructions, and renders it unnecessary to copy and comment on them separately here.

Instruction No. 1 given for the plaintiff is misleading in that it tells the jury if the nuisance caused by the defendant "reduced the height of his natural fall, he is entitled to recover such damages as he may have sustained by reason of the said natural reduction of said fall." This would lead the jury to infer that plaintiff was entitled to recover permanent damages and without regard to the statute of limitations pleaded. As heretofore shown, all he can recover is the damages occasioned by the loss of the use of his water power for five years previous to the bringing of his action. *Ward* v. *Ward,* 47 W. Va. 766; *McCreery's Adm'r.* v. *Railroad Co.,* 27 S. E. 327. Instruction No. 2 is not erroneous in that it endeavors to establish a mill right by pre-

scription, but it is unnecessary in this case. Plaintiff had his mill constructed and in operation at the time the boom was erected. The defendant without authority from plaintiff had no lawful right to locate and construct its boom so as to materially affect or destroy plaintiff's water power. A dam does not usually alter or change the flow of the water below it. It may interfere with floatage or a dam above it. *Lincoln* v. *Chadbourne,* 56 Maine 197; Gould on Waters, s. 204.

Instruction No. 3 is not bad because it advises the jury that plaintiff was entitled to the use of both his artificial dam and natural fall as against the defendant's right to erect a boom below the same. The same cause that destroyed the power of the fall also rendered the dam useless. Without the fall the dam would have been of no value. These two last being merely general instructions to find for the plaintiff presumtively relate to the condition of affairs at the time of the institution of the suit, and it was unnecessary to limit the time to the period free from the statute of limitations. Instruction No. 4 is misleading and should not have been given. The true measure of plaintiff's damages is the loss he sustained by reason of his not having the use, during preceding five years, prior to the bringing of this suit, of his mill free from the alleged nuisance thereto. If this loss was total then the loss of profits or the rental of the property is the true measure of damages. If not total, then the comparative loss of rents or profits is the measure of damages. The elements of loss in case of a removable nuisance is usually measured by the rental value of the property. 3 Sedgwick on Damages, s. 948, p. 64. The measure of damages for the interruption of the natural flow of a stream which prevents the running of a mill is what the mill would have been worth during such deprivation of its use if such deprivation had not taken place. That is its rental or profitable value. *Wooden* v. *Wentworth,* 57 Mich. 278. The first section of the instruction seems to authorize the jury to take into consideration the permanent value of the mill as though it were affected by a permanent nuisance. If such damages were allowed it would authorize the continuance of the nuisance for all time. The second section of the instruction is in accord with the law. The third section contains the same fault as the first, as it allows permanent damages whereas the plaintiff can only recover for the temporary non-use of his property occasioned by de-

fendant's wrongful act. He cannot abandon a mill partly
constructed and sue the nuisancer for the amount expended by
him, but he is entitled to a fair rental for the full capacity of
his water power, subject to reduction for the use he has had
thereof. He has the right to have the nuisance abated by re-
peated actions and if he fails to assert this right he cannot
make the nuisancer liable in addition to the rental of the prop-
erty for the costs of improvements unnecessarily abandoned by
him. He should proceed with his improvements and make the
nuisancer pay for the rental thereof until the nuisance is abated.
This instruction was improperly given. There is no objection
to the fifth instruction, for the statute of limitations does not
run against a continuing nuisance except as against the main-
tenance of the same five years prior to the institution of the
suit. Nor to the sixth, as it is a mere general instruction that
the jury should find for the plaintiff provided it is shown by a
fair preponderance of the evidence that the defendant caused
the injury complained of, as it is presumably limited to the
time immediately preceding the bringing of the suit, although
it would have been better to have limited the instruction to the
period not barred by the statute of limitations.

This also disposes of the instructions asked by the defendant
and refused by the court except the 10th and 12th, which relate
to the non-liability of the defendant by reason of its having five
years prior to the institution of this suit leased the boom to the
Coal River Boom and Driving Company. While the boom is un-
der lease, it is still the property of the defendant, and was located
and constructed by it to be used in the manner the lessees are
using it, to-wit: For the purpose of catching and storing logs,
and while the lessees may be equally guilty with the lessors in
maintaining an unlawful nuisance as to plaintiff's property,
yet the lessors still own it, authorize the use and derive a profit
therefrom. The original erector of a nuisance or that which
creates a nuisance cannot escape responsibility by conveying the
premises away, much less by leasing them. *Plummer* v. *Har-
per*, 3 N. H. 88 (14 Am. Dec., note, 336).

The defendant took a large number of exceptions to ques-
tions and answers none of which appear to be important or suf-
ficient to reverse this case had it been properly tried as to the
true measure of damages, and it is useless unnecessary work to
cumber the record with them.

As the case must be reversed, it becomes unnecessary to consider the grounds for continuance or the motion for a new trial founded on the insufficiency of the evidence or the discovery of new evidence.

For the error committed by the circuit court in giving the erroneous instructions asked by plaintiff the judgment is reversed, the verdict of the jury set aside, a new trial awarded, and case remanded .

*Reversed.*

BRANNON, JUDGE, (*dissenting*) :

The Legislature by giving a court power to grant a mill-dam right vests property in the mill-owner, which can not be taken away with out compensation, because the Legislature may grant a right impairing public right of navigation. *Crenshaw* v. *Slate River Co.,* 6 Rand. 245; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312; Angell on Water Courses, s. 562. But as far back as the act of March 2, 1819, statute law provided, and does yet, that a mill-dam, though built under grant of a court, if obseructive of navigation, is a public nuisance, and navigation has preference over such franchise. 2 Rev. Code 1819, p. 225; Code 1849, p. 326, ss. 3, 5, 6, 7; Code 1899, ch. 44, ss. 24, 26, 27, 28. Hence by reason of this legislation a mill-dam grant gives a right, subject to every just right of navigation by an individual, subject to the right of the state, or any company holding its franchise, to erect works to improve or utilize navigation. There would exist in mill-owners no right to damage against any person or corporation using a stream in a proper manner; but for damage from the exercise of this franchise in a wanton or careless manner, the mill-owner has an action. *Gaston* v. *Mace,* 33 W. Va. 14. This action for negligence remains to the mill-owner against a corporation. It would exist under the Boom act if s. 28 were not in it. Thus it seems that it is not this action for negligence that is saved by section 28, as it would exist without that section. It must be some other action that is saved. What one? That which but for the section would not exist; that is, an action by mill-owner or persons injured by the operations of the boom company with negligence. As the statutes cited give preference to navigation over the mill right, a boom company would not be liable for injury to the

mill-owner, if the company acts without negligence; but this section takes away the benefit of that preference from the company, leaving it liable, if its works damage any one. It declares it shall be liable to mill-owners. From their being named we infer that the Legislature knew that statute law made the mill dam right subordinate to lawful navigation, and that if it did not save action to them, none would exist, and it included them in this saving section because otherwise they would have no action except for negligence. If it intended them to be subordinate to the rights of the boom company, why did it include them by name? It put them on a plane with other property owners. Action is saved to all alike. It surely gave action to land owners. It did not merely intend to save them actions for negligence; they would exist without that section. So as to the action of the mill owner. I am impressed with the consideration that the Legislature, when considering this boom act, did not regard its powers as those of ordinary log rafting, known to generally do no damage to mill owners or others, but knew that the powers to build booms and piers and gather great collections of logs, and impede the natural flow would inevitably cause damage to mills and lands, and determined to make such companies answer for damages to mill owners and other proprietors arising from their operations though unaccompanied by negligence. In *Rogers v. Boom Company*, 41 W. Va. 598, this section 28 is so construed.

I am reluctant to so construe this boom act, giving powers to a corporation operating for its own gain so great, as to place all mill owners and land owners at its mercy, without remedy for injury, unless misuse, negligence, can be shown. Say that the Legislature, under the reserved preference for navigation, could vest a company with immunity from such liability, my position is that it has not chosen to do so; it has not chosen to outlaw all people living along a stream so useful to its citizens by using this navigation preference vested in it for their great damage. It has manifested the contrary by section 28, reserving them action for self defence. Did it mean this? Ought it not be liberally construed for their protection? Intended to save rights, should it be frittered away by a narrow construction so as to save only what was already saved without it? The law being that when a company has a charter to carry on a work, it is not liable, unless guilty of negligence, this section was in-

tended to make a boom company vested with powers so fraught with danger to take its grant with the duty of repairing any loss entailed upon others from its exercise. If the boom, though properly made, though it could not be otherwise made to answer its end, does yet overflow a bottom, the company is liable.

Does it so dam and obstruct the water as to injure the health of those along its banks, or render it unfit for stock or otherwise? If so, the company is liable. Therefore, I do not think any of the counts for want of charge of negligence bad. True, technical pleading requires an averment of wrongful action, but it does seem to me that as we take judicial notice of section 28, by the averment that defendants' boom damaged plaintiff, a cause of action is shown. From this view, it follows that the liability does not depend upon the chance or capricious ground of the boom being placed here or there, near to or remote from the mill. It may be placed anywhere without its entailing negligence from choice of location, for it carries liability wherever placed if damage ensue. I think JUDGE DENT's opinion unsatisfactory in the fact that it infers negligence from the mere occurrence of damage, which, on principle, cannot be.

What I have said above is predicated upon concession of power in the state to grant boom rights regardless of mill owners, but leaving them remediless for any damage from the necessary and proper operation of a boom. I do not discuss this matter. Many authorities say that in improving navigation a riparian owner's rights of property cannot be impaired without compensation, others that whatever is necessary to navigation may be done without pay. *Monongahela Nav. Co.* v. *United States*, 148 U. S. 341; *Yates* v. *Milwaukee*, 10 Wall. 497; *Moore* v. *Veazie*, 32 Me. 343. I have no idea that the state can enable any corporation to injure a riparian owner's land outside the stream. *Rogers* v. *Boom Co., supra; Weaver* v. *M. & R. Boom Co.*, 28 Minn. 534. It is claimed by counsel for Pickens that he has a vested property in the fall of the water in Coal river, and doubtless has for all purposes of use as a riparian owner. Gould on Waters, s. 204. He says he cannot be compelled to yield it without pay. *C. B. & Q. R. R.* v. *Chicago*, 166 U. S. 226; *Monongahela Co.* v. *United States*, 148 U. S. 312.

Here intervenes the reservation made by statute as to mill dams. But as this right is inseparably connected with the stream, I have never been able to separate the right to such

fall from the mill dam, as the water and fall are used with it, and thus partake of its cast; that is, if the property in the dam is subject to the public right of navigation, if the grant of the dam right was accepted subject to it, the property in the water's flow does not change it. It may be a question not so clear whether the reservation of navigation rights in the statutes above referred to were designed for interior streams merely floatable by logs. If for any reason the Legislature could not, under this navigation right, impair a mill right, the charter could not give the boom company any exemption from liability for damage. I do not express any opinion as to this, because I think the Legislature has in section 28 shown a purpose not to exercise this right.

I cannot agree to set aside the verdict because it gives prospective damages as for original and permanent injury. While the declaration goes for such damages, yet it is clear that if the nature of the injury is not permanent, impermanent damages may be given, and we cannot say permanent damages were given in the face of an instruction, which was given, that Pickens could "not recover any damages that may have resulted to him since the institution of the suit, or which may accrue to him in the future by reason of injury complained of in the declaration."