## CHARLESTON.

### ROGERS v. COAL RIVER BOOM & DRIVING CO.

Submitted January 26, 1894.—Decided April 4, 1894.

1. BOOMS—ESTOPPEL.

A party who leases the river-bank in front of his land to another for the use of a boom to be operated in the river opposite said land, and who after the boom is constructed, receives rent year after year from the boom company for said land without protest, is estopped from objecting to the manner in which the boom is constructed.

2. BOOMS—EVIDENCE—DAMAGES.

In a case of this character it was error in the court to allow a witness to give his opinion as to the amount of damage that would be occasioned by the future washing of the plaintiff's bank.

3. BOOMS—DAMAGES—NUISANCE.

If a private structure or other work on land is the cause of a nuisance or other tort to the plaintiff, the law can not regard it as permanent, no matter with what intention it was built, and damages can therefore be recovered only to the date of the action ; so, where a stream is wrongfully obstructed by a private dam or canal, the plaintiff injured can only recover damages to the date of the writ.

4. BOOMS—DAMAGES.

Where the damage complained of is occasioned by the erection of piers for a boom in the river, by constructing cribs of logs, and filling them with loose stone, and using them to catch and hold logs, which results in causing the current to flow against and wash plaintiff's bank, the damage occasioned thereby can not be regarded as of a permanent character, and a recovery can not be had at law of the entire damage in one action.

5. BOOMS—DAMAGES.

Damages for a continuing trespass, such as those arising from

overflowing one's land, can only be recovered to the time of commencing suit therefor. Subsequent damage for the continuance of the trespass gives a new right of action.

Brown, Jackson & Knight and Payne & Green for plaintiff in error cited 23 W. Va. 452; 38 W. Va. 438; Woods, Landlord and Tenant, 704; Id. 353; Id. 688; 2 South 552; 4 Bos. & Pull. 290.

H. L. Broun for defendant in error:

I.— *Where the evidence is certified, instead of the facts proved, the Appellate Court will consider it as upon a demurrer to evidence by the exceptor.*—6 W. Va. 111; 16 W. Va. 308; 21 W. Va. 709; 24 W. Va. 186.

II.— *Where the injury is permanent and affects the value of the estate, entire damages must be recovered in one action.*—23 W. Va. 453; 26 W. Va. 787; 34 W. Va. 466; 112 Mass. 334; Sutherland on Damages, vol. 3, page 403, et seq.

III.— *Opinions of witnesses acquainted with sbuject-matter admissible to show amount of damages.*—26 W. Va. 788, 796; 24 W. Va. 622, 674 and citations.

IV.— *Verdict should not be set aside though improper evidence admitted if it appears not to have prejudiced opposite party.* 29 W. Va. 421; 33 W. Va. 56, 57.

V.—*Not necessary to prove negligence in Trespass on the Case under sec. 9, Art. III of Constitution.*—16 W. Va. 402; 23 W. Va. 407, 434; 34 W. Va. 474.

VI.—*Instructions not applicable to the circumstances of the case as shown by the evidence are properly refused.*

English, Judge:

This was an action of trespass on the case, brought in the Circuit Court of Kanawha county by Mahlon S. Rogers against the Coal River Boom & Driving Company to recover damages for injuries sustained by the plaintiff by the construction of a boom in Coal river opposite the lands of the plaintiff, located about two miles from the mouth of said river, and by causing the river bank, which belonged to the plaintiff, and had been leased to said company, to wash and cave. The defendant demurred to the declaration and to each count; and the demurrer was sustained.

The plaintiff thereupon filed an amended declaration, to which also the defendant demurred, and the demurrer was overruled, and the plea of not guilty was interposed, upon which issue was joined. The case was then submitted to a jury, who found a verdict in favor of the plaintiff for two hundred and fifty dollars. A motion was made to set aside the verdict, and grant the defendant a new trial, because the same was contrary to the law and the evidence, which motion was overruled, and judgment was rendered for the plaintiff, and the defendant excepted.

Several bills of exception were saved to the defendant during the trial, and during its progress the defendant by its counsel moved the court to give to the jury the following instructions, which are numbered respectfully 3, 4, 5, 8, and 9, which the court upon consideration refused to give.

"No. 3: The court further instructs the jury that if they find from the evidence that at the time of the injury complained of the plaintiff had leased to the defendant the river-bank alleged to have been injured for boom-purposes, with contemplation of constructing and operating a boom, wherein the defendant's boom was constructed, then the plaintiff can not recover for damages resulting from the continuance and operation of said boom, unless they further find that said injury was the result of negligence on the part of the defendant, in such construction and use."

"No. 4: The court further instructs the jury that the letting of the bank for the use of a boom, with knowledge at the time of the point of location of said boom, is, in the absence of a covenant to the contrary, an assumption by the lessor of all risks of damages or injuries to said banks resulting from a reasonable construction and use of said boom, and for such damages he can not, in such case, recover."

"No. 5: The court instructs the jury that if they find from the evidence that the plaintiff leased to the defendant the river banks alleged to have been injured, for the use of a boom, that the plaintiff assumed the risk of such damage as might result from the reasonable use of such boom; and the court further instructs the jury that if they further find

that the defendant constructed, used, and operated its boom in a reasonable manner, they must find for the defendant."

"No. 8: The court further instructs the jury that if they find from the evidence that the plaintiff leased to the defendant the river bank, the alleged injury to which is the cause of this suit, for boom purposes, he assumed the risk of all ordinary wear and tear resulting to said bank from the reasonable and proper construction and use of said boom; and that, unless they find from the evidence that the said boom was constructed and used in a wrongful, improper, or negligent manner, they must find for the defendant; and, further, that the burden is on the plaintiff to prove that said boom was constructed or operated in a wrongful, negligent, or improper manner."

"No. 9: The court instructs the jury that any person leasing property for a specified use, in the absence of an express covenant to the contrary, assumes the risk of the ordinary wear and tear of such property resulting from such use, and the said lessee is not liable for damages to said property resulting from such use, unless caused by his wrongful or negligent act."

To the opinion of the court refusing to give said instructions the defendant by its counsel excepted.

In considering the propriety and legality of these instructions let us look first at the contents of the lease. The plaintiff, in consideration of the sum of forty dollars, leased to the defendant a strip of land on the west bank of Coal river, between low-water mark and the top of the bank above high-water mark, from the upper line of his land to the point opposite the mouth of Indian creek, for the use of the boom belonging to said company for the period of one year with the right to renew the same from year to year, so long as the said company or its assigns maintained a boom at said place in Coal river, and the right of way to a path along the top of the bank for men to pass up and down to attend to the said boom.

Thus it appears from the face of the lease itself that the river bank was leased for the use of the boom; a path and right of way for the employes along the top of the bank

was provided for, and the river-bank contained, as the evidence shows, about three acres of poor, thin soil. The fact that the defendant contracted to pay forty dollars *per annum* for it, would indicate that it was to be used for purposes other than farming; and the fact that so large an amount of rent was demanded shows that the plaintiff must have contemplated that this strip of land would receive some harder usage than it would for ordinary purposes, when used for the purpose of catching and holding logs in a boom.

The character of the boom—whether it was to be a string-boom or a boom with piers—was not set forth in the agreement, but it was for the use of the boom belonging to said company. The plaintiff, in his testimony, states that when he leased his bank it was for a string boom, and after the lease was made the boom was built on its present location and shape, which throws the water over against his land, and causes the bank to wash away.

The lease, however, was made in December, 1886, and forty dollars a year had been paid by the company and received by the plaintiff for six years at the time this suit was tried in 1893, making an aggregate of two hundred and forty dollars, or eighty dollars per acre for the land used, so that the plaintiff could afford to have his bank washed to some extent, and must have contemplated it when he fixed the rent. The plaintiff, then, leased his bank for the use of the boom. In what manner it was to be used, other than for a passway for the employes, does not appear; but the boom company wanted that bank for the use of the boom. It may have been for the purpose of fastening logs or spars to, or it may be that they were aware that by displacing the water in the river with their logs and piers they would cause the water to back up or flow against that bank; and knowing that this was necessary for the operation of their boom, they were willing to pay a large price for it; and the plaintiff had full notice of the purpose for which it was to be used, and received and continues to receive the rent for the same, renewing the lease year after year without protest.

We think the instructions asked for by the defendant

should have been given to the jury, and that the court erred to the prejudice of the defendant in refusing them.

As to instruction No. 3, there is no proof or pretence that the defendant was guilty of any negligence in the construction of its boom. There was no contract that the boom should be constructed and maintained in any particular manner; and the fact, that the plaintiff received the rent year after year without objection, shows that the plaintiff acquiesced in the action of the defendant in constructing it as it did, and that estops him from complaining of the manner of its construction. The bank was leased for boom-purposes, and, unless the defendant was guilty of some negligence in the construction or use of its boom, we can not see that the plaintiff can recover damages for the continuance and operation of said boom; and the court should have so instructed the jury. Wood, Landl. & Ten. p. 928, states the law as follows: "The tenant is liable either to the landlord or third persons for any improper use of the premises producing damages, as well as for any negligence in their use;" citing numerous authorities.

Instructions Nos. 4 and 5 may be considered together, as they are of the same import. The said river bank having been leased for the use of the boom, with knowledge at the time of the point of location, certainly implied that the lessor, if he knew what he was doing, assumed all the risks of damages or injuries to said banks resulting from a reasonable construction and use of said boom. If a man hires his property for a purpose, in which it will be subjected to severe usage, he charges more for it, but he assumes the risk resulting from a reasonable use of it in the business for which it is hired, and for these reasons we think the said instructions should have been given. In the case of *Torriano* v. *Young*, 6 Car. & P 8, it was held that "a tenant from year to year is not liable for permissive waste, and is not liable to make good mere wear and tear of the premises." See, also, Tayl. Landl. & Ten. 402.

As to the eighth and ninth instructions, they should have been given under the authority above cited, and for the reason that there can be no question that the burden is on the plaintiff to prove that said boom was constructed or

operated in a wrongful, negligent, or improper manner. Under the lease, the defendant had the right to use the land for the purpose of its boom, unless it so used it in a negligent or improper manner, and, if not so used, it was incumbent on the plaintiff to allege the fact, and prove it; in order to recover. In the case of *U. S.* v. *Bostwick*, 94 U. S. 53, it was held that, "in the absence of an express covenant to repair, a tenant is not answerable for accidental damages, nor is he bound to rebuild if buildings are accidentally destroyed by fire or otherwise."

Did the court err in allowing the witness John Rogers to give his opinion to the jury as to the probable future washing of the lands by reason of the construction of the boom? This witness stated, that in his opinion the damage to the plaintiff's land, caused by the erection of the defendant's boom, was from six hundred dollars to eight hundred dollars. And on cross-examination witness stated that he took into consideration the future washing away of about fifteen acres thereof in estimating the damages stated by him, whereupon the defendant moved to strike out so much of the said witness's evidence as stated his opinion of the amount of damages aforesaid, and exclude it from the jury, and insisted it was not admissible in law upon the said issue; but the court decided that the evidence so given by the plaintiff's said witness was admissible and proper to go to the jury, and the same was accordingly admitted, and left to their consideration.

Upon this question Sedgwick on the Measure of Damages (volume 1, § 93) says: "If a private structure or other work on land is the cause of a nuisance or other tort to the plaintiff, the law can not regard it as permanent, no matter with what intention it was built; and damages can, therefore, be recovered only to the date of the action. So, where a stream is wrongfully obstructed by a private dam or canal, the plaintiff injured by it can recover compensation only to the date of the writ. So, in an action for obstructing the plaintiff's light, the plaintiff can recover only to the date of the writ; and the same is true where the defendant wrongfully filled a canal, flowed the plaintiff's land, *etc.*"

This question was passed upon by this court in the case

of *Hargreaves* v. *Kimberly*, 26 W. Va., 788, in which case it was held (point 7 of the syllabus): · "In an action for damages for diverting water from a run it was proper to ask a witness to state from facts within his own knowledge what, in his opinion, was the amount of damages suffered by the plaintiff because of such diversion of the water; and to authorize the giving of such opinion it is not necessary that the party be an expert." Point 8: "But it is error to permit a witness to answer, in a case like this, the following question: 'What will be the future damage to the property from the acts of the defendant?'" Johnson, P., in delivering the opinion of the Court in that case, cites the case of *Smith* v. *Railroad Co.*, 23 W. Va. 453, and quotes from the opinion of Green, J., as follows: "Where the damage is of a permanent character, and affects the value of the estate, a recovery may be had at law of the entire damage in one action;" and adds: "But where the extent of the wrong may be apportioned from time to time, separate actions may be brought to recover the damages sustained;" citing numerous authorities, and among them the case of *Thayer* v. *Brooks*, 17 Ohio, 489, which was an action for nuisance in diverting the water from the mill of the defendant in error; and the Court in that case held that the rule of damages in an action for nuisance is the injury actually sustained at the commencement of the suit.

In the case of *Hargreaves* v. *Kimberly*, *supra*, Johnson, P., further says: "It seems to me that in all cases where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance, and not permanent in its character, but of such a character that it may be supposed that the defendant would remove it, rather than suffer at once the entire damage which it might inflict if permanent, then the entire damage can not be recovered in a single action, *etc.*"

Now, when we refer to the declaration in the case under consideration, it does not appear therefrom what kind of a boom belonged to the defendant at the date of said lease. It is, however, averred that "on or about the 1st day of

November, 1889, while in possession under said lease, the defendant wrongfully and unlawfully built and constructed in Coal river, opposite the land leased as aforesaid, a certain other boom, with fourteen piers, *etc.*" For all that appears in the declaration, the first boom may have had as many piers. The evidence shows that these piers were constructed by building a crib of logs, and filling the same with loose stone, and that the boom was used for catching and holding logs that were floated down the river in the same manner as other booms are ordinarily used; but this structure—these piers—can not be regarded as permanent; they can be taken down and removed when the defendant has no further use for the boom; and the evidence shows that the defendant used the boom for the purpose contemplated at the time the lease was executed.

The case of *Hargreaves* v. *Kimberly, supra,* was reported in the American Reports (volume 53, p. 121) and a valuable note appended thereto, citing many authorities, and, among others, the case of *Canal Corp.* v. *Hitchings,* 65 Me. 140. The action was trespass for filling about two hundred yards of canal, and the justice instructed the jury, *inter alia:* "Whatever diminution there is in the value of the property by reason of the trespass is an element of damage." The defendant excepted to this instruction, and it was held erroneous; that the recovery should have been limited to such damages as were sustained down to the commencement of the action. Walton, J., writing the opinion, said: "It is now perfectly well settled that one who creates a nuisance upon another's land is under a legal obligation to remove it, and successive actions may be maintained until he is compelled to do so."

The doctrine of all the cases is that a recovery of damages for the erection of a building or another structure upon another's land does not operate as a purchase of the right to have it remain there, and that successive actions may be brought for its continuance until the wrongdoer is compelled to remove it. As a necessary result of this doctrine, it has been held, and we think correctly, that, in the first action brought for such a trespass, the plaintiff can recover such damages only as he had sustained at the time when

the suit was commenced, "because, for any damages afterwards sustained a new action may be sustained, and the law will not allow two recoveries for the same injury." See, also, *Canal Co.* v. *Bourguin*, 51 Ga. 378, where it is held that "damages for a continuing trespass, such as those arising from overflowing one's land, can only be recovered to the time of commencing suit therefor." Subsequent damages for a continuance of the trespass give a new right of action, and this, we think, states the law correctly.

In the light of these authorities our conclusion is that the court erred in allowing evidence to go before the jury as to damage that might occur to the plaintiff's land by future washing, and in allowing the plaintiff to show by testimony the condition of the river bank in front of his land at the time of the trial. For these reasons our conclusion is that the verdict must be set aside, the judgment reversed, and the cause remanded for a new trial, with costs to the plaintiff in error.