# CHARLESTON.

## PICKENS v. COAL RIVER BOOM COMPANY.

### Submitted March 4, 1908.    Decided May 4, 1909.

(Rehearing filed May 13, 1909.)

(Refused October 26, 1909.)

1. CORPORATIONS—*Nuisance—Liability to Private Individual.*
   A state charter of a corporation to do a work, which, without the charter would be a nuisance, will absolve it from liability by indictment or otherwise as a public nuisance, but will not exempt it from action by an individual suffering damage from it. (p. 15.)

2. EVIDENCE—*Judicial Notice— Res Judicata.*
   Judicial notice will not be taken of a judgment in another suit as *res judicita*, whether in the same or another court, when not pleaded or given in evidence. (p. 12.)

3. JUDGMENT—*Limitations of Actions—Res Judicata—Computation of Period of Limitations.*
   When the operation of a boom causes deposit of sand in a stream thereby injuring the grinding capacity of a mill, the

mill owner may recover in actions from time to time as damage and loss occur, and is not compelled to sue for present and prospective damage in one suit, and the statute of limitations begins to run, not from the construction of the boom, but when the damage occurs in time. (p. 16.)

Appeal from Circuit Court, Kanawha County.

Action by Roman Pickens against the Coal River Boom & Timber Company and others. Judgment for plaintiff, and the Coal River Boom & Driving Company appeals.

*Affirmed.*

*Payne* & *Payne, Price, Smith, Spilman* & *Clay* and *Brown, Jackson* & *Knight,* for plaintiff in error.

*Mollohan, McClintic* & *Mathews, Chilton, McCorkle* & *Chilton,* and *A. B. Littlepage,* for defendant in error.

BRANNON, JUDGE:

Roman Pickens brought an action against the Coal River Boom & Timber Company and the Coal River Boom & Driving Company, both corporations, to recover damage for injury to his mill on Coal river, claiming that the works of the Boom Company on the stream below his mill stopped the outflow of sand and other sediment and caused them to rest in large quantities in the stream, and lessened the fall of the water over his dam, and thus lessened the grinding capacity of his mill. He recovered verdict and judgment for seven thousand dollars, and the Driving Company appeals.

This is a second action for damage from the same cause. The character of the case is just the same as that of the former action, which twice came to this Court. Reports of decisions in that action will be found in *Pickens* v. *Boom & Timber Co.,* 51 W. Va. 445, and 58 *Id.* 11, rendering it needless to repeat the facts, as they are the same involved in the present case.

Does this boom, if damaging the mill by operation upon the water power, give Pickens action? The boom right rests upon a state charter. Does that charter give immunity from action by Pickens? We think that former decisions of this Court upon the same and similar facts answer this question in the affirmative The two decisions just cited do so. In *Rogers* v. *Coal River Boom Co.,* 39 W. Va. 272, it was held that where

damage comes from erection of piers for a boom in a river by construction of cribs of logs and filling them with stone, and using them to catch and hold logs, resulting in causing the current to flow against and injure the bank of a riparian owner, an action lies for him. It was again so held in *Rogers* v. *Coal River Co.,* 41 W. Va. 593. Upon such facts we have decided that liability rests upon the boom company, and we must say so as matter of *stare decisis.* · Indeed, it is admitted that the boom company is the same as that involved in the former action of Pickens, and also in the two other cases cited. We do not say that the former suit of Pickens is *res judicata* in this case, because it is not pleaded or given in evidence. We have a statute which allows the court to read and use, on hearing a second appeal or writ of error in the same case, the record of a former appeal or writ of error. But that statute does not apply in this case, since this is a writ of error in a second action, and we cannot use the record of the former action as *res judicata.* True, the Driving Company is lessee of the Boom Company and privy in estate with the latter company; but whilst judgments bind the parties and their privies, privies to be so bound must get their rights from parties after the judgment, and those having rights before the judgment are not bound. *Maxwell* v. *Leeson,* 50 W. Va. 361. The Driving Company acquired its right from the Boom Company before the judgment, and for that reason we cannot hold it *res judicata* against the former, as we could, if it had acquired its rights after the judgment, though not a party. But another reason why we cannot say that the former judgment is *res judicata* against the Driving Company is, that it is not pleaded. Judicial notice will not be taken in one suit of the proceedings in a separate suit, whether in the same or another court. The record must be either pleaded or given in evidence. *United States* v. *Bliss,* 172 U. S. 326. Many authorities say this. We do not here discuss the question whether, to have effect, the record of the former judgment must be pleaded or may be given in evidence. As I have said we do not use the former judgment as *res judicata;* but we say that upon the facts of this case and the principles announced in our former decisions of *Pickens* v. *Boom Co.* and *Rogers* v. *Boom Co.,* the liability upon the defendants is fixed and settled on principles, not of *res judicata,* but *stare decisis.* But

if it were an open question, we think that the liability exists. Criticism has been made upon the calling of this boom an unlawful nuisance in 51 W. Va. 445. This criticism seems to import that counsel think that if the boom cannot be denominated a nuisance, its erection and operation cannot give Pickens right of action. It is said that the grant of the boom charter under legislative authority purges it of the character of nuisance. It has seemed to me that this criticism is not exact and the matter immaterial. There are two classes of nuisances, public and private. A nuisance is public when affecting wrongfully the public generally, and private when affecting only certain individuals. There is no difference between these two kinds of nuisance, except as they affect the public or only certain individuals. The nature of the thing doing injury is the same. 29 Cyc. 1152; 21 Am. & Eng. Ency. L. 682. But for the charter the boom would be a public nuisance; but that makes it a lawful structure as to the state and the public. The state or an individual cannot abate it as a public nuisance, it cannot be indicted as a nuisance. *Crenshaw* v. *Slate River Co.*, 6 Rand. 245; *Watts* v. *Railroad,* 39 W. Va. 198; *State* v. ⟨*Elk Island Boom Co.,* 41 *Id.* 796. An individual affected by a private nuisance may peaceably abate it. 1 Am. & Eng. Ency. L. 79. But he cannot do so if the work is under charter rights. To this extent only does the charter qualify the work as a private nuisance. The thing is still a private nuisance as to the individual. The charter has not made it further a lawful thing than exempting it from abatement. It is a private nuisance still, if of a nature to be such, just as if no charter had been granted. If it hurts the individual, it is actionable because a nuisance. It will be seen in the books that even railroads are often so called, when doing damage. If without charter it would be an actionable nuisance, the charter does not change its nature. But what is the difference whether we call it a nuisance or not. "Nuisances always arise from unlawful acts. That which is lawful can never be a nuisance. Therefore, where the legislature, by an act that it is competent for it to enact, authorizes an act to be done, which would otherwise be a nuisance, the act is made lawful and is not a nuisance, so far as the public is concerned, unless the power given by the legislature is exceeded." Wood on Nuisances, Vol. 1, p. 2, note. Note

the words "so far as the public is concerned." Charter does not exempt it from liability to private property. A lucid and strong case in this connection is *Trenton Water Power Co.* v. *Raff,* 36 N. J. L. 335, a corporation authorized by law built a bridge across the Delaware river at a point below whee Jacob's creek enters it. The plaintiff owned a mill dam up that creek. The defendant's dam backed the water and injured the plaintiff's dam. The court held in an elaborate opinion that the plaintiff was entitled to the natural descent of the water and that the unobstructed flow was a part of his freehold as much as the title to the soil, of which the owner could not be deprived without his consent or compensation. It held that, "An action will lie to recover damages for an injury to property in the execution of work under legislative authority, if the injury be direct, or the work be done for the benefit of an individual or corporation with private capital, and for private emolument, even though the public be incidentally benefitted by it. An act of the legislature, authorizing one to erect a dam in a river which is a public highway, may be a justification so far as public interests are concerned, but will be no justification for a *private* injury, caused by the overflow of land of an individual proprietor. The legislature cannot deprive an individual of the advantages of a stream of water in its natural flow over his lands, or create an easement in his lands of the right to overflow, wthout providing compensation for the injury." The court distinctly said that such charter would exempt from indictment or any action for infringing public right, "but will be no justification for a private injury caused by the overflow of the land of an individual proprietor," citing many cases. It is not an open question anywhere, especially in West Virginia, under our decisions, that though a corporation have a charter for its work, yet it is liable for damaging private property. Even by the general law of Europe and the common law of England, coming with our fathers to America, "it was a qualification of the right of eminent domain that compensation should be made for property taken or sacrificed for public use and the American constitutions were intended to establish this principle beyond legislative control." *Pumpelly* v. *Green Bay Co.,* 13 Wallace 166. Our constitution says that private property can neither be taken nor damaged for public use without compensation. Many of our de-

cisions hold that railroad and other corporations, though char-
tered, are liable for damaging private property. On what other
basis can we justify such cases as *Mason* v. *Bridge Co.,* 17 W.
Va. 396, and *Spencer* v. *Railroad,* 23 *Id.* 406, and *Smith* v. *R.
R. Co., Id.* 451, and many other cases? The Legislature can-
not, by charter, exempt a corporation from liability for dam-
age to private property, because the constitution forbids it to
do so. In my judgment this would be so, as a general proposi-
tion. If it be said, if it can be said, that mill rights are sub-
ject to impairment or destruction by grant of right to improve
navigation for the reason stated by myself in *Pickens* v. *Boom
Co.,* 51 W. Va. 445, that such reservation was made by the
statute under which mill rights are granted and, therefore, a
boom right would have precedence over the mill right, and in-
jury to a mill would not be actionable; then I say that the
boom act in section 28 saves right to mill owners to sue for
damages. It was intended to give right of action to mill own-
ers and others injured by the exercise of the boom rights, as
we held in *Rogers* v. *Coal River Boom & Driving Co.,* 39 W.
Va. 272. What other purpose can we assign to section 28 of
the boom act saying, "That nothing in this act shall be so con-
strued as to deprive the owners of any mill property, or any
other proprietors on said river and branches thereof, from re-
covering damages for injury to their property by said corpo-
ration"? Notice that mill owners are here specifically men-
tioned. That means that if, without that section, the mill
owners could not sue, they are placed in the same line with
other property owners by this saving, which means that they
may sue just as any other property owner can. The Legisla-
ture intended to ignore the condition named in the mill act
subordinating rights of mill owners to the rights of navigation.
It intended that notwithstanding this the boom company
should be liable to mill owners for damages. The Legislature
by that section treated them as having rights and intended to
save those rights from damages by boom companies organized
under the boom act; intended to place them on the same plane
and with the same right as other riparian owners, because it
specially mentioned them along with other property owners and
accorded them the same right of suit. In my judgment this is
too plain to admit of controversy. I discuss this matter in

*Pickens* v. *Boom Co., 51* W. Va. pp. 454-5. If there be a damage to mill or other property I think it exists without the element of negligence on the part of the boom company under the paramount force of our constitution saving private property from damage for public use without compensation. Is the party damaged? That is the test.

The statute of limitation of five years is pleaded in this case. This suit was brought to recover damages from 21st December, 1899, to 21st December, 1904, five years immediately preceding the institution of the suit. The contention on the side of that plea is, that as the boom had been constructed long prior to 21st December, 1899, the statute began to run from the date of the construction of the boom and thus recovery is barred. Upon principles stated in *Rogers* v. *Boom Co.*, 39 W. Va. 272, and *Pickens* v. *Boom Co.*, 51 *Id.* 445, this plea is inadmissible. Its theory is that the boom is a structure of permanence and that any damage from it is permanent and the right of suit is for past and prospective damage, and but one suit can be maintained, and that there must be recovery once for all. Our holding in *Pickens* v. *Boom Co.* and *Rogers* v. *Boom Co.* that the damages are continuous and recurrent, and repeated suits may be maintained as damage goes on, is assailed and we are asked to overrule those former cases in this respect, because unsound. But we think that holding is supported by much authority in this and other states. *Hargrave* v. *Kimberly,* 26 W. Va. 787; *Watts* v. *R. R. Co.* 39 *Id.* 196; *Henry* v. *Railroad,* 40 *Id.* 234; *Eels* v. *Railroad,* 49 *Id.* 65; *Rogers* v. *Boom Co.,* 39 *Id.* 272. We cite authority from other states. *Prentiss* v. *Wood,* 132 Mass. 486; *Baldwin* v. *Caulkins,* 10 Wendell 165; *Chicago &c. Co.* v. *Andreesen,* 62 Neb. 456; *Omaha &c. Co.* v. *Standen,* 22 *Id.* 343; *Miller* v. *Keokuck R. Co.,* 63 Iowa 680; *St. L. R. Co.* v. *Biggs,* (Ark.) 20 Am. St. R. 174; *Hempsted* v. *Cargill,* 46 Minn. 118; *N. Y. &c R. Co.* v. *Hamlet Hay Co.,* 149 Ind. 344; *Chicago &c. Co.* v. *Emmert,* 73 N. W. 540. In *Ridley* v. *Railroad,* 118 N. C. p. 998, the rule is stated thus: "The right to recover prospective as well as existing damages in an action depends usually upon the answer to the test question, whether the whole injury results from the original tortious act or from the wrongful continuance of the state of facts produced by these acts," citing *Troy* v. *Chesshire*

*R. Co.,* 3 Foster 83. In *St. L. R. Co.* v. *Biggs,* 20 Am. St. R.
176, is a well considered note upon this subject. "The author-
ities agree that when the original act creating a nuisance to
land is permanent in its nature, and is at once productive of all
the damage which can ever result from it, and at once destroys
the estate for all practical purposes, so that when the act is
completed all the damage that can be effected thereby is con-
summated, the entire damages must be recovered in one action,
and the statute of limitations begins to run against the cause
of action from the time of the complete erection of the nui-
sance." Many cases are cited. We cannot say in this case
that all damages came at once, but they came and increased as
time progressed. The cause continued operative and working
damage, in all probability and as the evidence tends to show,
increasing damage from increasing time. The defect of power in
the mill preventing its full grinding capacity year after year,
and growing, the damage continuing. In *Culver* v. *Chicago R.
Co.,* 38 Mo. App. 130, it is said that the statute does not begin
to run for flowage of land until it occurs, although it may have
been growing and working for a length of time beyond the pe-
riod of limitation. We cannot say that Picken's damage started
with the construction of this boom. It was miles below, and
we know from our own knowledge of the action of streams, and
under the evidence, that it took time to deposit such great
amount of sand through miles of the river to work harm to
Pickens. As time went on the damage went on and increased.
We do not test the matter only by the permanent or imperma-
nent character of the structure, but by the damage. Does it
all occur at once or come occasionally or as time goes on? If
the structure is temporary, the damage is not regarded as per-
manent; but though the structure is to stand forever, yet if
the harm comes occasionally or grows, the damage is recur-
rent and recovery is not limited to one action, as the perma-
nent bridge in *Eels* v. *Railroad,* 49 W. Va. 65. But why should
we further discuss or refer to these authorities when our for-
mer decisions have settled this matter?

For use I cite cases illustrating permanent damages. *Vir-
ginia Hot Springs* v. *McCray,* 6 S. E. 217; *Gwin* v. *Railroad,*
46 W. Va. 151; *Smith* v. *Railroad,* 23 *Id.* 451; *Battrell* v. *Rail-
road,* 34 *Id.* 237.

We have examined the instructions and we find no error therein, or in evidence admitted. It is useless, as the case is not to be remanded, to discuss these matters. The discussion of the principles above stated in the former decisions apply to this.

Former decisions above given rule this case and require us to affirm the judgment.

*Affirmed.* ·

WILLIAMS, JUDGE, *(dissenting)* :

I cannot concur in the conclusion reached by my associates. The decision involves a principle of vital importance to every public service corporation in the state; and, I think, misapplies it. The opinion, in effect, holds that a boom company, without negligence in the construction, maintenance or operation of its boom, is nevertheless liable to repeated actions for damage on account of an unavoidable injury to a mill owner, which is the natural result of the lawful operation of its boom, notwithstanding the injury is continuous and permanent. It affects railroads, pipe lines and all improvement companies exercising the right of eminent domain, and may rise up some day, like the ghost of Banquo, to plague us. If this decision is right, boom companies will have a precarious and fretful existence in this state. Because if they are liable in repeated actions for unavoidable injury resulting from a continuation of the same cause, as if for maintaining a private nuisance, they are liable to be compelled by suit to abate the nuisance, which may mean a removal of their booms.

It is not shown in this case that the Boom Company was negligent in any particular, either in the construction, or operation of its boom. It, therefore, can not be held liable on the ground of negligence. Then, if it is not negligent, how can it be said to be maintaining a private nuisance, when the injury to Pickens' mill is unavoidable and the Boom Company is occupying the river by virtue of the right of eminent domain conferred by its charter? I confess my inability to see it in this light. It is true the books speak of a thing which causes injury to the property of another as a nuisance. But I am now discussing an abatable nuisance, one that gives the injured party a perpetual right of action for a continuation of one and the same cause.

The injury to Pickens' mill was not recurrent, intermittent and traceable to distinct causes; but was due to a gradual accumulation of sand in the river below his natural water-fall. His own testimony is as follows: "Q. When did the water commence backing on you? A. Ever since they commenced the operation of the boom." In other parts of his testimony he says the backing of the water kept on gradually increasing. He further says that the boom was completed "along about 1890, 1891 or 1892." This shows when he received the injury and the nature of the injury; it was increasing, continuous and permanent. His right of action accrued when he was injured. That was in 1892 at most. But he did not bring this action until December 21, 1904; and not having brought his action until more than five years after he had a right to bring it, he is barred by the statute of limitations.

I do not deny that Pickens at one time had a right of action for injury to his mill, or even to his natural water-fall if he had not had a mill. There is abundant authority for this. He owned the fee in the bed of the river and was entitled to the flow of the water as nature had provided. This was a property right guaranteed to him by the Constitution, which the legislature could, at no time, have taken from him without just compensation, and which, since the Constitution of 1872, it could not so much as injure without compensation. Still his property was liable to be taken absolutely, or to be injured by the Boom Company by its right of eminent domain conferred upon it by the law and its charter. In either event, however, Pickens was entitled to compensation; in the one case, by means of condemnation proceedings; in the other case by an action for damages. His right to sue for injury is expressly saved to him by section 28 of the Boom Act; but he had the right under the Constitution, independent of this reservation. It has been expressly decided by this Court in cases involving injury to a land owner by the changing of the grade line of a street. In these cases there was no statute conferring, or even reserving, a right to sue for injury, and the Court held that the party injured could sue by virtue of the constitutional right. *Johnson* v. *Parkersburg*, 16 W. Va. 402; *Hutchinson* v. *Parkersburg*, 25 *Id.* 226; *Blair* v. *Charleston*, 43 *Id.* 62; *Crenshaw* v. *The Slate River Co.*, 6 Rand. 245.

Pickens and the Boom Company have mutual rights in the river; and each is bound to respect the rights of the other. The Boom Company can not injure Pickens' water power without responding in damages; neither should Pickens perpetually harass the Boom Company by repeated actions, as if it were maintaining an unlawful nuisance, when the proof shows that the injury was the natural result of the lawful exercise of a lawful right. In order to avoid the effect of the statute of limitations the Boom Company must be guilty of maintaining a private, abatable nuisance; and in order to constitute the injury complained of a nuisance it must result from negligence either in the construction, or in the operation. There was no attempt in this case to prove negligence. Consequently, the principle of law governing in cases of abatable nuisances has no application to the case. I know of no decisions by this Court, except the case of *Pickens* v. *Boom Company,* twice brought to this Court upon writs of error, and reported in 51 W. Va. 445 and 58 W. Va. 11, which decide that, because injury results, an abatable nuisance is to be inferred; nor have I been able to find any other authority for such doctrine in the decisions by the courts of England, or of this country. I do not know what facts were proven in the former action by Pickens against the Boom Company, 51 W. Va., because the record of that suit is not in evidence in this. It appears, however, from a reading of the opinion that the boom was held to be a private nuisance, from the mere fact of injury to Pickens' mill, and not on account of actual negligence in the construction, or operation of the boom. I hold this is not law. Injury often results from the doing of a lawful thing in a skillful manner; in such case liability exists, but not for repeated actions, as if the thing were an abatable nuisance. This Court, in the 9th point of the syllabus, in *Hargraves* v. *Kimberly,* 26 W. Va. 787, following *Smith* v. *Pt. P. & O. R. R. Co.,* 23 W. Va. 451, states the rule of law which, I think, is applicable to this present case as follows, viz: "Where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance and not permanent in its character but of such a character that it may be supposed,

that the defendant would remove it rather than suffer at once the entire damage, which it might inflict if permanent, then the entire damage cannot be recovered in a single action; but actions may be maintained from time to time, as long as the cause of the injury continues."

It is again stated in these cases to be law, viz: *Taylor* v. *Railroad Co.,* (Point 2 of the Syllabus) 33 W. Va. 39; *Watts* v. *Railroad Co.,* 39 W. Va. 197, and *Henry* v. *Railroad Co.,* 40 W. Va. 234. This last was a case of injury from overflow of land resulting from *negligent* construction of an embankment, (mark the word negligent), and the Court, in its opinion, prepared by BRANNON, Judge, on page 242 says: "Where the nuisance is permanent, so that it will continue unless labor be applied to change it, and it necessarily injures the plaintiff, there must be a recovery in one suit for all damage, and none other can be afterwards brought, and recovery of damages will give the defendant right to continue his nuisance without further claim from the individual; but, where it is otherwise, there can not be recovery for future damages, but only from time to time as they occur, and one recovery does not justify the perpetuation of the nuisance, but there may be recovery after recovery, as long as continued."

No authority, other than the *Pickens Case,* 51 W. Va. and 58 W. Va., so far as I can find, holds that the injured party has a perpetual right of action for the same continuing cause of injury, unless the act causing it is done without lawful right, or unless the injury is the result of negligence. Negligence will make the act wrongful and constitute it a perpetual nuisance for which repeated actions will lie, as well as the right to have it abated. But if the act is lawful and the injury results from work skillfully done, the injured party has but one right of action, and he must bring his suit within five years from the *time of injury,* or be forever barred. If Pickens had sued within five years from the commencement of his injury, he could have recovered entire damages; but having failed to sue in time the statute cuts off his remedy, and the Boom Company is entitled to maintain the cause of injury unmolested.

A correct answer to the two following questions will determine whether the foregoing principle should be applied in this case, viz:   (1)   What is the cause of plaintiff's injury? and

(2) · When did it occur? It was caused by the boom and piers checking the natural flow of the water thereby causing a deposit of sand on the bed of the river in such manner as to back the water up against Pickens' water-fall, thus diminishing the water power. Mr. Pickens says that the sand began to deposit as soon as the boom was completed, and that it grew worse all the time. This proves that the injury was not intermittent, occasional or recurrent. It was not due to different causes, or to repetitions of the same cause; the injury was ·continuous,· unbroken and without intermission, resulting from a continuous and abiding cause which, instead of ceasing at times to exist, was all the time increasing. The first cause of injury was sand deposit; and the cause of the injury for which Pickens now sues is the sand deposited in 1892 or 1893 plus subsequent additions of more sand. It will not do to say that, because sand is of a shifting nature when acted on by running water, the injury is intermittent. When the flow of water is checked it prevents the sand from shifting, and holds it in place. · Therefore, the sand deposit is as permanent and continuous as the boom that caused it; and the boom is as much a permanent structure, in contemplation of law, as a house, a paved street or a railroad; none of which are permanent in a literal sense. Roofs of houses and ties in railroads will decay and rot away, and if not replaced will render the house and railroad uninhabitable and unusable. It is a matter of common knowledge that constant use will, in a few decades, wear away brick and even granite pavements. What the law means by the word "permanent" in this connection is something continuing, not to be presently removed, or discontinued. A board-walk has been judicially held a permanent thing; and so has an injury resulting from the erection of a dam under a twenty year lease. *City of Lowell* v. *French,* 60 Mass. 223 (6 Cush.); *Cleveland &c. Ry. Co.* v. *King,* 23 Ind. App. 573 (55 N. E. 875)·; *Street Ry. Co.* v. *Payne,* 192 Ill. 239; *Bassett* v. *Johnson,* 2 N. J: L. 154.

· The boom was "substantially" built, with piers constructed of logs forming a rectangular pen, bolted together and filled with stone to give them weight and prevent their washing away. These rested on the bottom of the river, and furnished the moorings for the boom logs. This, from its very nature, is a

permanent structure, within the legal meaning of the word. But if its permanency depends upon the length of time that the Boom Company may have the right to maintain it, it may be as permanent as the stream in which it is located. The boom may be used to catch other floatable material besides logs. It is not known, and, therefore, can not be said that it may not be so used after all the timber in the basin of Coal River has been cut and marketed, even if this should ever happen; nor can it be said that by the time all the timber now accessible to the river is floated down the stream, nature may not have reforested the land with a new growth of merchantable timber. Consequently, viewing it either from its inherent character, or from the length of time it may be used, it is a "permanent" structure.

From the uncontroverted facts in the case I deduce the following conclusions, viz: (1) that the injury is the natural and unavoidable result of the doing of a *lawful* thing in a *skillful* manner; (2) that, from both the testimony of Mr. Pickens and from the very nature of the injury, it is coexistent with the thing that caused it; (3) that the injury is necessary to the enjoyment of the Boom Company's franchise, and is therefore an injury lawfully inflicted and gives a right, or license, to the Boom Company to maintain the cause of injury. Now, apply the well settled law, and what is the result? It is that Pickens can sue but once, and has a right to recover entire damages, past and prospective, but he must sue within five years from the commencement of his injury, to-wit, not later than 1898, or be barred of his right.

Whether, or not, Pickens in some former suit may have been denied a recovery for entire damages, by a mistake of the court in failing to apply the correct principle, is not a justifiable argument to support a repetition of the error. The court is not in conscience bound by its own mistakes as if its decisions were in the nature of contracts to which it is a party. The ablest jurists are not infallible, and past experience and observation teach us that all courts sometimes make mistakes. But as soon as a mistake is discovered by a court it should not hesitate to correct it upon first opportunity, and in a manner to work as little hardship as possible. A court's decision is not law; it is only evidence of the law. And if a decision is erroneous it is

not even good evidence of law. There is no contractual relation between Pickens and the Boom Company involved in this action, dependent upon any former decision of this Court. Therefore, there is no justification for following any former decision, if thought to be erroneous. *Falconer* v. *Simmons*, 51 W. Va. 172; *Douglas* v. *Pike County*, 101 U. S. 677; *Henry* v. *Bank*, 5 Hill 535; *Paul* v. *Davis*, 100 Ind. 422; *Lewis* v. *Symmes*, 61 Ohio St. 471; *Thompson* v. *Henry*, 153 Ind. 56; *Roy* v. *Gas Co.*, 138 Pa. St. 576; *Alferitz* v. *Borgwardt*, 126 Cal. 201; *Allen* v. *Allen*, 16 L. R. A. (Cal.) 446; *Ellison* v. *Railroad Co.*, 87 Ga. 691. This rule is ably discussed by BRANNON, Judge, in *Falconer* v. *Simmons, supra,* and by POFFENBARGER, Judge, in *Harbert* v. *Railroad Co.*, 50 W. Va. 253.

The doctrine of *stare decisis* should not be invoked to sustain erroneous decisions, especially where rights of property will not be affected by overruling them. It is not a sacred and unassailable doctrine. It is only an argument, and it is the least forceful of all arguments. It has been disregarded by this Court, as well as by all others, in numerous instances; by this Court in *Town of Weston* v. *Ralston*, 48 W. Va. 158; *State* v. *McEldowney*, 55 W. Va. 1; *Pennington* v. *Gillaspie*, 63 W. Va. 541; *Catzen* v. *Belcher;* 64 W. Va., 314 (61 S. E. 930); and in many other cases to which I need not refer.

As a question of abstract justice, which would result in the greater injury, to deny Pickens recovery in this action because he was not allowed to recover entire damages in a former suit; or to permit a recovery in this action, and thereby approve the case of *Pickens* v. *Boom Company*, 51 W. Va. 445, and confer on Pickens the right either to sue the Boom Company every month in the year for damages, or compel it to remove its boom in order to abate the so-called nuisance? The question answers itself, and serves to show the utter futility of trying to administer justice without a strict adherence to correct legal principles. The law is the embodiment of man's accumulated wisdom during the ages, which has been preserved and transmitted to us through the centuries of the past. It is founded upon the experience of mankind throughout the historical past; yea, it is even supposed to have its beginning in a time wherein man made no record of passing events, a time whereto his memory runneth not; and the rules and principles, thus established

as a guide to his conduct in his social relations and duties to his fellow man, are safer guides than the conscience of the best and wisest judge.

I do not think the authorities cited in the majority opinion sustain the conclusion. *Watts* v. *Railroad Co.*, 39 W. Va. 196, certainly does not. That was injury from negligence. Point 7 of the syllabus states in terms, better than I can employ, the very rule for which I contend. *State* v. *Elk Island Boom Co.*, 41 W. Va. 796, was an indictment for obstructing the passage of fish, and the injury there complained of could have been avoided.

I think the law quoted from Wood on Nuisance is good. But it does not apply to the present case, because the legislature has authorized the act complained of to be done by the Boom Company, and, unless the act is done negligently, it can no more be a private than a public nuisance.

The New Jersey case, *Trenton Water Power Co.* v. *Raff*, 36 N. J. L. 335, on which so much reliance is placed does not decide the point for which I contend. It is true that was a second suit for the same cause of injury, the maintenance of a dam causing overflow of plaintiff's land. But it does not appear that defendant pleaded a former recovery, or the statute of limitations, in bar of plaintiff's action, and this question is not discussed in the opinion. The question there decided is, that, although an act be done under authority of legislative enactment, if injury result there is liability. This I do not deny. But, if the act be skillfully done, must the defendant be liable, as was held in *Pickens* v. *Boom Company*, 51 W. Va., perpetually, and for punitive damages, as if it were maintaining an abatable private nuisance? I cannot think so. There were only two ways in which to abate the injury, (1) remove the boom and piers, or (2) remove the sand as it accumulated, and to require the latter would be to make the Boom Company a trespasser.

*Taylor* v. *Railroad Co.*, 33 W. Va. 39, allowed a recovery for injury occasioned by the building of a bridge across a stream in such a way as to obstruct the natural flow of water in case of a freshet. That was for negligence. See point 2 of syllabus, and also opinion by BRANNON, Judge, on page 47.

*Eels* v. *Railway Co.*, 49 W. Va. 65, is in perfect harmony

with my contention. In that case the injury was occasional and intermittent; while in the present case it is continuous and permanent. I need only quote from the opinion to show its distinction: "The question is whether the injury of the plaintiff in this case, if any exists, is one known in the law as a permanent injury, requiring the action to be brought from the first instance of damage, within five years thereafter; or is that injury such as is known in law as recurring, intermittent and continuous? In the one case the action is barred; in the other it is not. If the injury is, in legal aspect, of the latter character, though the bridge was erected in 1870 and remained unchanged, and though the first distinguishable item of damage from it was shortly thereafter, yet the plaintiff could disregard it, and wait silent until the occurrence of another item of damage from freshet happening afterwards, and sue for damage to her lot from that occurrence, and other items of damage, within five years from their happening. We are of the opinion that the injury, if any, is to be classified as intermittent, not permanent. The mere building of the bridge did not cause any injury to the plaintiff. She could not sue for that alone. She could not sue until high water came and its force was, by reason of that bridge, thrown against her lot, and she received damage therefrom. That damage would be occasional as freshets might come, recurring, intermittent, one freshet doing some damage, another doing additional or greater damage."

Of course, no action will lie in any case until injury happens. But in the present case the sand in Coal River never ceased to interfere with Pickens' water power. The sand, first deposited, remained, and more sand accumulated. There was not a moment of time after the injury first began when it could be said that Pickens was not sustaining injury from the same continuing cause.

*Prentiss* v. *Wood*, 132 Mass. 486, was a case between private persons. In this case B's dam injured A's mill. The court held it was done "without right" and that it was a private nuisance. But the defendant's boom is in Coal River by right. It had a right to injure, but was liable to make compensation. This takes from it the character of a nuisance, and it is liable to respond only once, and within five years from the beginning of the injury.

*Baldwin* v. *Calkins,* 10 Wend. 167, was a case also between private individuals. Baldwin had erected a dam across Seneca river for his own benefit, under authority of an act of the legislature, and had overflowed the land of another. The court held that damages could not be recovered for more than six years prior to the action, although the injury had continued for a much longer time. The court further held that the plaintiff was not entitled to recover entire damages and that the measure of the damage was the value of the use of the land for six years prior to the bringing of the suit. · The court refusing entire damages on the ground that the defendant had a right to elect to reduce the height of his dam rather than pay entire damages. The distinction between the rights of a private individual and the rights of a boom company invested with the power of eminent domain, must be kept in view.

*Chicago &c. R. R. Co. Andreesen,* 62 Neb. 456, was a case of injury on account of an "insufficient culvert," which of course involved negligence.

*Omaha &c. R. R. Co.* v. *Standers,* 22 Neb., was a case of negligent construction of a bridge causing injury to land by overflow. The court held, that damages were recoverable only for past injury, and that one recovery did not bar another. But the opinion is based expressly on the ground of negligent construction, thereby constituting a perpetual nuisance.

*Miller* v. *R. R. Co.,* 63 Iowa 680, was also a case of negligence. The ditch causing the injury was "wrongfully dug," says the court. This, of course, constituted it an abatable nuisance.

*St. L. &c. R. R. Co.* v. *Biggs* (Ark.), 20 Am. St. Rep. 174, is directly in favor of my contention. Point 1 of syllabus reads as follows: "When a nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once compensated. In such case, the statute of limitations begins to run upon the construction of the nuisance."

This is the principle which should be applied in the present case. Pickens knew that as long as the water continued to flow in Coal river, and as long as defendant's boom remained in the stream, his injury would "necessarily continue." He could not help knowing this from the beginning. He also knew

66 W. Va.

that defendant could not abate the injury without either removing its boom or entering upon his land and removing the sand. The latter method of abatement, if not impossible of performance, would at least make the Boom Company a trespasser.

I have examined the other cases cited in the majority opinion, and, in my view, they do not sustain the conclusion. Where they hold that the statute of limitations does not apply, it is so held either on the ground of negligent construction, or on the ground that the injury did not occur at the time the act complained of was done; some of them so hold on both grounds combined.

The case of *Virginia Hot Springs Co.* v. *McCray,* 56 S. E. 216, I think is direct authority in support of my view. The first point of the syllabus reads: "An injury resulting from a permanent nuisance must be sued for in one action, and limitations begin to run from the time of the erection of the nuisance." This is what I insist on as the law applicable to the present case. So also does the second point of syllabus in case of *Guinn* v. *R. R. Co.,* 46 W. Va. 151, state the principle of law, giving the proper test in determining whether, or not, the statute of limitations has application in the present case.

The rule by which it must be determined whether, or not, permanent damages should be recovered in a given case is again stated in the opinion of the Court in *Battrell* v. *Railroad Co.,* 34 W. Va. 237.

In *Street Ry. Co.* v. *Payne,* 192 Ill. 239 (Syl. pt. 4) it is held: "The construction and operation of a power house by a street railway company upon its own property, if done in a reasonably skillful manner, do not constitute a nuisance which may be abated; but the company is liable to the owner of adjoining property in an action on the case for damages resulting from the establishment and operation of the power house, without any charge of negligence."

In the case of *Call* v. *Middlesex Co.,* 68 Mass. 232, which was a case very similar to the case under review, the court held that the statute of limitations applied, "even though such damages did not occur, and could not be foreseen, before the expiration of said three years;" three years being the statutory period allowed for the bringing of the action.

"In an action for injury to real estate by erecting and main-

taining a dam and flowing the water over the plaintiff's land so as to create a nuisance, an answer which alleges that the cause of action did not accrue within six years is good." *Lucas* v. *Marine,* 40 Ind. 289.

"Whenever a nuisance is of such a character that its continuance is necessarily an injury, and when it is of a permanent character that will continue without change from any cause but human labor, then the damage is an original damage and may be at once duly compensated. Successive actions are not allowed for damages resulting from negligence combining with a natural cause, however gradual the operation of the cause, and they will only lie where the defendant is continually in fault." *Powers* v. *The City of Council Bluffs,* 45 Iowa 652. See also *Eastman* v. *St. Anthony's Falls Water Power Co.,* 12 Minn. 137; *Baldwin* v. *Calkins,* 10 Wend. (N. Y.) 167; *Guinn* v. *R. R. Co.,* 46 W. Va. 151; *Henry* v. *R. R. Co.,* 40 W. Va. 242.

Farnham in his work on Waters and Water Rights, Vol. 2, sec. 586, in discussing the application of the statute of limitations to actions for various kinds of nuisances, says: "The rule that every continuance of a nuisance is a fresh nuisance should have no application in case of permanent nuisances of this class any more than it should be contended that a trespass upon the land and erection of the structure there should constitute a fresh trespass every moment it was continued for the purpose of extending the time within which the action could be brought. And there are cases which have applied the true rule that, in case the dam is a permanent one, the limitation period will begin to run against the right of action to recover damages for the injury, from the time the dam is built." And he cites the case of *Missouri &c R. R. Co.* v. *Graham,* 12 Tex. Civ. App. 54 (33 S. W. 576).

The theory of the plaintiff, however, is that the injury is intermittent and recurring, and that every injury resulting from natural causes, coupled with the existence of the boom, even though the boom remains unchanged, constitutes a fresh nuisance, and entitles him to a new action. This theory is wholly untenable, and is in conflict with all the authorities. There seems, however, to be much confusion in the decisions, growing out of a failure by some of the courts of the states to distinguish between those cases arising out of the conflicting rights of pri-

vate riparian owners, and those cases dealing with the rights of private owners as affected by public service corporations, such as railroad companies, canal and boom companies; and also, in the latter class of cases, in failing to distinguish between those cases in which the injury results from negligence, and those cases where the injury results from the right performance of a lawful act. But I find no authority which holds that a public service corporation is liable to a property owner in repeated actions for damages on account of an injury done to his property resulting from the proper exercise of its lawful rights. In such case its liability depends solely on the injury sustained by the private owner, and not upon its negligence, or wrongful invasion of another's rights, and, in such case, the right of the injured party to recover damages rests altogether upon the constitutional guaranty that his property shall not be taken, or damaged, without just compensation. And if the defendant once responds in damages for the injury caused by its lawful act, this should be accepted in lieu of the sum to which plaintiff could have shown himself entitled, if the defendant had procured the condemnation of plaintiff's property in the manner provided by law; and entitles the defendant to maintain the thing that caused the injury. This answers fully the demands of justice, for the plaintiff gets, in the form of damages, what he otherwise would have gotten as the assessed value of his land, and the defendant must thereafter be regarded as if it had taken the property under the exercise of its right of eminent domain; and the recovery operates to confer a license to continue the nuisance.

It would certainly entail a very great hardship on the Boom Company to hold it liable to respond in damages in successive, and unlimited number of, actions. If such were the law it would have the effect to deprive it entirely of the enjoyment of its franchise; because, if plaintiff has a right to sue it more than once, he has a right to sue it as often as he pleases. If he chose to do so, he could bring an action every month and thus bankrupt the defendant in paying costs. This appears to me to be not only unreasonable and unjust, but a very cruel doctrine; because, from the very nature of the injury, it is seen that the defendant is unable to abate the injury without pulling up its boom and piers from the river, or trespassing on plaintiff's

land.  The following authorities show that the injury to plaintiff is a permanent one, and not an abatable .nuisance:  "A railroad track laid upon a street of a city by authority of law, properly constructed, and operated in a skillful and careful manner, is not, in law, a nuisance."  *The Chicago &c. R. R. Co.* v. *Loeb,* 118 Ill. 203.

This was an action against the railroad company for injury done to plaintiff's property by the running of its engines and cars.  The defendant pleaded the general issue and the statute of limitations.  The railroad had been built and operated for a longer time than the statutory period within which an action for trespass to real estate could be brought, and the plaintiff was held to be barred.  The court in its opinion says, page 215:  "The allowance of successive actions for damage, as it should occur from day to day, as new ·damage, would seem to serve but the purpose of harassing, and the wasting of means in expenses of litigation.  The law does not favor the multiplying of actions."  Citing in support of this principle, a number of its own decisions, and *Kutz* v. *McCune,* 22 Wis. 628; Mills on Em. Dom., sec. 66; *Memmert* v. *McKeen,* 112 Pa. St. 315.

The principle was again announced in the later case of *The Hyde ·Park &c. Light Co.* v. *Porter,* 167 Ill. 276, which was an action by a property owner against an electric light company. One point of the syllabus reads:  "A property owner has but one action for damages for permanent injury to his property from the operation of an electric light plant near to it, but in such action all damages, present and future, are recoverable." The court in its opinion cited the case of *Chicago &c.. R. R. Co.* v. *McAuley,* 121 Ill. 160, wherein it was held that when the injury is "of a permanent character, so that the damages inflicted are permanent, a recovery not only may, but must, be had for entire damages in one action; and such damages accrue from the time the nuisance is created, and from that time the statute of limitations begins to run."  See also, *The Chicago &c. R. R. Co.* v. *Maher,* 91 Ill. 312.  *The City of Centralia* v. *Wright,* 156 Ill. 651, contains the following point in the syllabus, viz: "The erection of a dam by a city for water-works, whereby a riparian owner suffered damage through overflow and the destuction of a private ford, is a permanent injury, for which all damages, past, present and prospective, are recoverable in one

action, even though the city had only leased the site of the water works for twenty years."

"All special damages, present and prospective to the owner of lands resulting or to result from the proper construction, maintenance and operating of a railroad, under the laws of this State, constitute, as to such land owner, one single, common, indivisible cause of action, which may be enforced under the Eminent Domain act, or any other appropriate form of action." *Ohio &c. R. R. Co.* v. *Watcher,* 123 Ill. 440.

The case of *Bizer* v. *The Ottumwa Hydraulic Power Co.,* 70 Iowa 145, was an action brought by a land owner for damages for the overflowing of his land by the damming of the Des Moines river. The defendant was the grantee and successor of the company that had originally built the dam, and was simply maintaining it in its original condition. The court held that the injury was permanent and original; that it was not a nuisance which could or should be abated; that the plaintiff was entitled to but one action for past and future damages, which action accrued to him at the beginning of the injury, and held that the defendant was not liable. On page 147, the court says: "Where the injury is permanent, but one action can be maintained, and the recovery allowed is for all damages, past and prospective. The right of action in such case accrues wholly against the party doing the injury." See, also, *Powers* v. *The City of Council Bluffs,* 45 Iowa 652; *Finley* v. *Hershey,* 41 Iowa 389; *The Town of Troy* v. *The Cheshire R. R. Co.,* 23 N. H. 83; *E. L. & B. S. R. R. Co.* v. *Combs,* 10 Bush. (Ky.) 382; *Ridley* v. *Seaboard &c. R. R. Co.,* 118 N. C. 996; *Aldworth* v. *City of Lynn,* 153 Mass. 53; *Fowle* v. *New Haven & Northampton Co.,* 112 Mass. 334.

The *City of North Vernon* v. *Voegler,* 103 Ind. 314, was a suit for injury to property resulting from negligently grading a street, and the court thus states the law: "In an action for injury to real estate caused by the negligence of corporate officers in constructing a public work of a permanent character, as the grading of a street, all damages, past and prospective, can be recovered in one action." "In such a case, all the damages must be recovered in one suit, and for fresh damages resulting from the original wrong, a second action can not be maintained."

In the case of *Powers* v. *The St. L. &c. Ry. Co.*, 158 Mo. 87, we find the law thus stated in the syllabus: "Where actual damages done to plaintiff's land by overflow waters due to the negligent and defective construction of an embankment and canal, and the consequent change in the bed of a river or creek, were actual and apparent at the time such obstructions were finished, and were discoverable then to be inevitably continuous, the statute of limitations began to run at the time the obstruction was finished, although such injury gradually increased and did not become complete for sometime afterwards. The quantum of damages in such case, the injury being gradual and not due to any unusual flood, can be ascertained and measured just as well before as after the injury occurred, and all the damages, present and prospective, can be recovered in one action."

Mr. Sutherland in his work on Damages, Vol. IV, sec. 1045, referring to the decision by one of the appellate courts of Illinois gives the following as the proper test in determining whether or not an injury amounts to a permanent one and therefore giving but one right of action, or whether it is a continuing nuisance for which the wrongdoer may be subjected to repeated actions, viz: "Where a permanent structure is lawfully erected and thereby an injury is occasioned to adjoining property, if the structure is properly built with reference to its use and so as to produce no unnecessary damage, the cause of action arising from an injury caused by it is an entirety; but if the injury complained of results from an improper construction it is otherwise."

Applying the foregoing principles to the present case there is no doubt in my mind that the injury, in a legal sense, is a permanent one, and is not a continuing and, therefore, abatable nuisance. If this is so, it then necessarily follows that the cause of action accrued to plaintiff at the time the injury began, and that the statute of limitations would begin to run from that time. To my mind this conclusion is irresistible.

If it is to become the law of this State, that a boom skillfully constructed in a permanent manner, and lawfully operated, is a continuing nuisance, because the property of a riparian owner is injured by it; and boom companies are to be subjected to repeated actions, unlimited in number, involving penal dam-

ages, what will be the effect upon the large number of such industries in this State? Will it not retard the development of our streams, and seriously injure the lumber industry which is at present one of our great sources of wealth? Is not the principle fraught with very great danger, and will it not work a great injustice and hardship if perpetuated?

I think the statute of limitations bars plaintiff's action, and am in favor of reversing the judgment and dismissing the action.

### PETITION FOR REHEARING.

BRANNON, JUDGE:

A petition for rehearing says that the Court did not consider a point of chief reliance of the defendant. This Court in this case has decided that Pickens was not barred from successive actions by one suit and recovery therein, but that he might maintain successive actions for different periods of time. The petition for rehearing does not claim to the contrary, does not claim that the damage was original and permanent in nature, but admits that there may be successive actions for continuing damage. But the point which it is said the court has not considered is thus stated in the petition for rehearing: "We do not claim that the statute runs from the construction of the boom. We freely admit that the statute does not begin to run until injury occurs. But we do insist that the statute begins to run when injury once occurs, and that the statute applies as well when there is a right to successive actions, as when all damages present and prospective must be recovered in one suit. We say that for all damages occasioned by the deposit of sand in any year a suit must be brought within five years thereafter; and that when this suit was brought on December 21, 1904, damages could only be recovered for injuries caused by sand deposited within five years prior thereto, and not for injuries caused by sand deposited at any time since the construction of the boom, as ruled by the trial court. As directly sustaining our contention we gave the Court the high authority of the Supreme Court of Pennsylvania in *Lentz* v. *Carnegie,* 145 Pa. St. 627, a decision which has never been answered or attempted to be answered by counsel for Pickens."

It is said that instructions allowed the jury to consider dam-

ages within five years before the second suit whether such damages came from sand deposited before or within five years; that the instructions did not tell the jury to eliminate damages caused by deposit of sand prior to five years and so the jury could consider damages coming from sand deposited prior to five years, though such sand were deposited prior to the first suit. Concede this. We say that as we held that the case did not call for recovery in one action for past and future damages the jury could consider damage attributable to sand deposited prior to the five years as well as damage coming from sand deposited within five years, because both co-operated in working damage. The jury could not do the impossible thing of separating those two deposits, and find what damage came from each. Suppose there was not a grain of sand deposited after the date of the first suit. If the old deposit kept its place and still continued to impede the mill wheels and curtail the power of the mill to grind, a second action could be sustained therefor, because the action was not for deposit of sand or construction of the boom, but for its *effect* on the mill, for loss or diminution of its working capacity within five years before the second suit. Suppose the boom caused additional sand deposit within five years before the second suit, and because of it the mill lost some of the power which it had at the date of the first suit, or lost none of its power, would not the old deposit of sand by helping the new deposit be liable for its aid or contribution to the result, that is, loss of capacity in the mill? Plainly it would. According to counsel the jury should have been told that it could not consider the old deposit as working damage, though the sand still kept its place in the stream and helped the new deposit to work damage. The jury should not have been told to thus split the cause of damage. It could and should consider the *result,* that is, the damage within five years worked by both deposits in lessening the mill's power. The following from 25 Cyc. 1137, will answer the contention of counsel: "Continuing or Repeated Injury. Cases frequently arise where damages resulting from an act are continuing or recurring so that they cannot presently be ascertained or estimated so as to be presently recoverable in a single action. In such cases separate and successive actions may be brought to recover the damages as they accrue, and a judgment rendered in one of

such actions for damages accrued up to the time when suit was brought is no bar to another action to recover damages accruing after the judgment. To cases of this character the statute of limitations does not have the same rigid application as to cases where all the damages may be recovered in a single action, and the two main principles applying are as follows: Where continuing or recurring injury results from a wrongful act or from a condition wrongfully created and maintained, such as a continuing nuisance or trespass, there is not only a cause of action for the original wrong, arising when the wrong is committed, but separate and successive causes of action for the consequential damages arise as and when such damages are from time to time sustained; and therefore so long as the cause of the injury exists and the damages continue to occur plaintiff is not barred of a recovery for such damages as have accrued within the statutory period beyond the action, although a cause of action based solely on the original wrong may be barred; but the recovery is limited to such damages as accrue within the statutory period before the action. Where continuing or repeated injury results to plaintiff from an act not of itself or in its inception unlawful or injurious to him, as in the case of a nuisance caused by a structure lawfully erected, no cause of action arises at the doing of the act or the erection of the structure, but aside from this the law is substantially the same as in the class of cases just mentioned; each recurrence of damage gives rise to a new and separate cause of action and the statute runs against each as it arises, so that a recovery may be had at any time during the continuance of the injury, for such damages as have accrued during the statutory period before the action unless sufficient time has elapsed to give defendant a prescriptive right to continue the cause of the injury." So, though the act of construction of the boom was lawful, yet, as it created a condition by deposit of sand entitling Pickens to recovery, it is not material when the sand was deposited creating that condition which caused the damage. That condition or state of the stream coming from the construction of the boom, and that condition still continuing entitling Pickens to recovery, how is it material when the sand was deposited so it continued to work damage within the five years for which this suit was brought?

Counsel tell us that the case of *Lentz* v. *Carnegie,* 145 Pa. St. 612 (27 Am. St. R. 717), is conclusive to reverse this case. It was an action for damages to land caused by coal slack thrown into a stream and carried by the water and deposited on land. )Evidence and instructions were given to consider the value of the land as a whole as it was before the deposit of the slack and what was its present worth. Slack had been deposited more than six years before the suit. The court held it error to allow the value of the land before the deposit to be compared with its present value, because that would include damage done before six years, since the original deposit was seventeen years before the action. That was a question of the value of the land; in other words, it would give damage for seventeen years and thus include damage from the start. Now, that case concedes the right to recover damage to the farm in its use within six years, the limitation period. The objection was that the evidence and instructions allowed the jury to go behind six years. That is its point in the opinion. But that case does not say that the jury could not consider slack deposited before the six years as still operating in damaging the cropping and other use of the land within six years. That case has nothing to do with the point made by counsel, that is, that the jury must find damage coming only from that sand deposited within five years before the second suit, and ignore any effect within those five years, of sand deposited prior thereto. If the decision is sound it does not settle that point. I may cite per *contra Bower* v. *Cook,* 4 M. G. & S. 236, where there was a previous recovery for placing stumps and stakes in a ditch on land, and a second suit was brought for continuing them in the ditch, and recovery allowed. So *Holmes* v. *Wilson,* 10 Ad. & El. 503, where trustees of a turnpike had built buttresses to support it on the plaintiff's land. Though the plaintiff had already recovered for the creation of the nuisance, it was held that he could recover for its continuance. So I may cite *Gulf* v. *Roberts,* 86 U. S. 1062. A railroad company left timber in a stream obstructing its flow and overflowing land, as rains came. Held that the land owner could sue as often as he suffered injury from loss of use of land for crops, but not for difference in market value of land before and after obstruction of the stream—just like the Lentz case. Now, what the difference between deposit of stumps and trees

and deposit of sand? We are also referred to *Cavanaugh* v. *Durbin,* 156 Mass. 470. Durbin had cut a ditch and erected a dam on plaintiff's land. He sued the city of Boston. The city was held not liable. It was claimed that Durbin was liable not only for the cost of removing the dam and filling the ditch, but for damages for loss of the use of the land to date of suit. It was held that the delay was caused by mistaking the remedy and suing the city of Boston erroneously, for which Durbin was not liable and that damages could not be enhanced against him. I do not see that that case is applicable to this.

Remember that this is a suit for damage in lessening the power of the mill of Pickens. It is for the effect of the sand upon the mill, not like permanent injury to land from deposit upon it. Pickens had right to operate his mill in its original condition not only during the five years involved in the first suit, but also during the five years involved in the second suit. He had right to run that mill every minute, every hour, every day, week, month and year, free of damage from deposit of that sand, and it is utterly immaterial when that sand was deposited, so it continued to operate in diminishing the working capacity of the mill

It is but repetition of old principle and of what has been several times said in the litigation over this matter, to say that it is only the case of a private non-abatable nuisance because working injury to private property, every day's continuance of the old cause being a fresh injury giving cause for successive actions. 3 Blackstone 220; 23 Cyc. 1187. That the boom was built under law does not give immunity from damage, because the Legislature could not exempt from damage under the Constitution, and also because the boom act says that a boom company shall be liable.

As the Driving Company operated the boom and worked damage, it would be liable, not only for deposit in its own time, but also that deposited by the lessor, on principles stated in *Pickens* v. *Boom Co.,* 58 W. Va. 11.

*Rehearing Refused.*